**Antoinette CAMMISANO, Respondent,**

v.

**HARTFORD LIVESTOCK INSURANCE COMPANY, Appellant.**

No. 23348.

Kansas City Court of Appeals,

Missouri.

Nov. 6, 1961.

John C. Gage, Gage, Hodges, Moore, Park & Kreamer, Kansas City, for appellant.

Joseph P. Spallo, August V. Spallo, Spallo & Spallo, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an action on an insurance policy by plaintiff, Antoinette Cammisano, against defendant, Hartford Livestock Insurance Company, for damages for the loss of life of her horse, Lowry Girl, for vexatious delay and for attorney fees. The cause was tried to the court. Plaintiff was awarded a judgment of $1,500 from which defendant has appealed.

Since this is an action at law tried by the court without a jury it is our duty to review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous. Our final duty is to affirm the judgment appealed from or direct such judgment as justice requires. Section 510.310 RSMo 1959, V.A.M.S.; Browder v. Milla, Mo.App., 296 S.W.2d 502.

As a result of our own review of the transcript we adopt and set out the Finding of Facts of the trial court as accurate, and,

while succinct, sufficient for a full understanding of the questions presented on this appeal.

"This is an action on a livestock insurance policy issued by the defendant company insuring plaintiff's mare in the amount of $1,500.00—'A. Against loss by death from natural causes, to include death from illness or disease or accident. * * * (except as herein otherwise provided, limited and excepted.)' " [1]

"B. Against loss caused by the intentional destruction of any animal or animals insured hereby within the term of this policy, but only and not otherwise when such loss caused by the intentional destruction occurs under either of two circumstances, to wit:

"1. Where complete fracture of a bone or bones occur by accidental injury and where because of such fracture immediate destruction is necessary and a certificate from a licensed veterinarian certifying that such destruction was immediately necessary shall have been obtained prior to the destruction of such animal or animals.

"2. Where this company shall consent to such destruction.

"II

"On June 21, 1959, during the term of the insurance policy, plaintiff's mare was accidentally injured when she and other horses became frightened and she was crowded into a Jeep, resulting in deep wounds to the left foreleg and the complete severing or sawing of the pectoral muscles, which are the muscles which attach the left foreleg to the body, and she also sustained two fractures of the splint bone in the left foreleg. The horse was taken to a qualified veterinarian, who placed her in surgery for some five and a half hours and continued to treat her at his hospital for some twelve days.

"III

"The insured gave notice to the defendant of the accident and requested that the defendant's agent inspect the animal. Blank report forms were given to the insured, calling for a report by the veterinarian. This report was completed by Dr. Pilcher, the treating veterinarian, on June 29, 1959, and transmitted to the company, in which the horse's condition was described as 'fair', with a 'guarded diagnosis' as to her recovery. Defendant's agent duly reported the matter to the defendant's home office, but no inspection of the horse was made at any time by the company's representative.

"IV

"After twelve days of treatment at the veterinary hospital, the wounds were open and sloughing and seemed to be progressing satisfactorily. Plaintiff then took the horse back to her farm, and the treatments were continued by plaintiff's husband as directed by the veterinarian, using medicines that had been obtained from the veterinarian.

"On July 13, the animal's condition became worse and Dr. Davies, another veterinarian, was called and found at that time that gangrene had developed throughout the entire foreleg to the extent that the horse could not be treated medically and her death was imminent. He destroyed the animal to relieve her of her suffering. The evidence shows that because of the nature of the injuries, gangrene would probably have developed and that gangrene can develop within a period of two to three days or from two to three weeks. Notice of the animal's death was duly given to the company and demand made by the plaintiff for payment under the policy, which the company refused.

"V

"The Court finds that the gangrene was the natural result of the injuries sustained by the horse and that such injuries would

---

[1]. The bracketed portion of the policy was omitted from the trial court's findings, and this court has included it as a part of its findings.

have caused her death within a few days, and that her destruction by Dr. Davies was a humane act necessary to relieve her of her suffering, but such destruction did not change the fact that the primary cause of death was the injury accidentally sustained by the animal."

The trial court then entered the following conclusions of law and judgment:

"I

"The Court finds that the proximate cause of the animal's death was the accidental injuries sustained when she ran into or was forced into the Jeep.

"II

"The Court finds that plaintiff is entitled to recover under coverage 'A' of the policy.

"III

"The Court finds that the defendant's refusal to pay was not vexatious within the terms of the Missouri statute.

"Judgment

"It is therefore ordered, adjudged, and decreed that plaintiff have judgment against the defendant in the sum of $1,500.00 with interest at 6% from July 13, 1959, to date, together with her costs."

As its principal appellate contention defendant asserts the trial court erred in rendering judgment for plaintiff based upon coverage provisions of the insurance policy relating to death from natural causes for the reason the uncontroverted evidence showed that the death of the horse resulted from intentional destruction not within the coverage provisions of the policy. Defendant argues that since it is uncontroverted that the horse was shot—Clause B (loss by intentional destruction) of the above set out policy provisions controls, and that since plaintiff admits there was no *complete* fracture of a bone or bones nor a certificate of a licensed veterinarian cer-

tifying that destruction was immediately necessary obtained *prior* to the destruction, nor company consent to destruction obtained as required by Clauses B(1) or B(2) there can be no recovery under the terms of the policy.

█ Plaintiff contends she is entitled to recover for the loss of her horse under Clause A of the insurance contract for the reason that Clause A insures "Against loss by death from natural causes, to include death from illness or disease or accident * * *." Plaintiff asserts the uncontroverted evidence shows that the proximate and direct cause of the death of her horse was the accident it suffered on June 21, 1959, which resulted in injuries and gangrene making its death a certainty and necessitating its destruction purely for the humane purpose of sparing it further suffering as inevitable death approached. Thus, says plaintiff, her horse died "from natural causes, to include * * * accident" and Clause A insures her for precisely that type of loss. Plaintiff denies that Clause A is modified or affected by Clause B so as to prevent her recovery under Clause A.

The principles which we must apply in resolving the contentions were given recent expression by our Supreme Court in Thompson v. B & G Wrecking & Supply Company, 346 S.W.2d 65, 68: "In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity when none exists * * *.'"

Our duty is to ascertain and give effect to the intention of the parties as disclosed by their contract.

The insurance policy contract, as we view it, has two insuring clauses. The first, Clause A insures against loss by death from natural causes including accident. It is clear under the facts of this case that the proximate—the direct—the true cause of the death of the horse was its accident which brought on gangrene so widespread and so located on the horse's body as to make death an imminent certainty. Illustrative is the case of Stucker v. Hartford Accident & Indemnity Co., 220 Ark. 475, 248 S.W.2d 383, 384, cited by both parties. There, also, the suit was upon a policy insuring the life of a saddle horse against death caused by disease and accidental injury. The complaint alleged the horse was accidentally injured and later destroyed by a veterinarian for humane reasons. The proof showed the animal was accidentally injured on May 14, 1951, that its condition became progressively worse and that in July the attending veterinarian deemed the animal incurable and destroyed it. The court stated, "In these circumstances we think it plain that the jury could have found that the accidental injury was the direct and proximate cause of the animal's death. Appleman, Insurance Law and Practice, § 3151. The necessity for destroying the horse was due solely to the accidental injury and did not constitute a superseding factor in the chain of causation. Rest., Torts, § 443. The situation is analogous to that in which an insurer against fire is held liable also for water damage incident to attempts to extinguish the blaze; the loss is still caused directly by fire." See, also, National Live Stock Ins. Co. v. Elliott, 60 Ind.App. 112, 108 N.E. 784. In 5 Appleman, Insurance Law and Practice, § 3151, page 299, it is expressed, "Where the death of an animal has occurred by the act of the owner he will be entitled to recover the insurance if the act was necessary and done in good faith."

Clause A insures for loss from death caused by accident. There can be no doubt but that if the policy did not contain Clause B, the loss in question would clearly come within the terms of the policy. What is the effect of Clause B on Clause A? Clause B itself is a separate insuring clause covering loss from death by intentional destruction where certain conditions exist and certain requirements are met. On its face it is an independent insuring clause against loss by intentional destruction and then only under two limited circumstances. It does not purport to change, modify or limit Clause A. Its very grammatical construction indicates it is a separate insuring clause.

Defendant contends that part of Clause A reading, "except as otherwise provided limited and excepted" refers to Clause B and that Clause B limits Clause A. We do not think so. Clause B's language does not appear to be any limitation or exception to death caused by accident as provided in Clause A but rather provides coverage additionally to that provided in Clause A— i. e. death caused by intentional destruction. Reading the insurance contract as a whole it seems that the words in Clause A "loss by * * * accident * * * except as herein otherwise provided, limited and excepted" refers to portions of the policy other than Clause B, such as its limitation of recovery of loss to an amount not "exceeding the amount for which the animal is stated to be insured in the schedule written in this policy, nor in any event exceeding its actual cash value at the time injury or disease causing loss is sustained or contracted," etc. Loss by intentional destruction and loss by accident are not the same.

Defendant asks what purpose do insuring Clause B(1) or B(2) serve if not to limit Clause A? Several suggestions might be made. Clause B insures in situations not covered by Clause A, as for example if the horse was crippled, useless, and in some pain yet was not about to die, and its owner wished to destroy it. Clause B(2) would

permit the animal's destruction if the company's consent was first obtained. Other conditions being met Clause B(1) would permit recovery where death was by intentional destruction if there were an accidentally caused complete fracture of a bone and the mentioned certificate obtained. In such circumstance it would appear to be unnecessary to secure the consent of the company nor prove as a fact, as in a trial, that the death was actually caused by accident. The prior obtaining of the certificate apparently would be sufficient. Thus, the Insuring Agreements of Clause A and Clause B are unlike, are not dependent upon each other and not limitations or exceptions on each other.

Defendant relies heavily on the Stucker case, supra, as supporting its contention that Clause B limits Clause A. The policy in the Stucker case was drawn differently than the policy in the case at bar. In the Stucker case all of the language, including that which defendant says is similar to that before us in Clause B, is contained in one sentence and in one paragraph—the principal insuring clause of the policy. The court viewed the critical language as being, "provided, however, the company shall not be liable for humanitarian destruction except in the following circumstances", etc., and said it was an exception to coverage which did not add protection but took it away. Such a clause contained in the same sentence and same paragraph as the insuring clause is subject to the interpretation that it was intended to limit the sentence in which it was contained. In the case before us Insuring Clause B is a separate paragraph, differently worded, and with the same insuring structure as Clause A. "A. Against loss by death * * * to include * * * accident * * *." "B. Against loss caused by the intentional destruction * * *." The effect is the same as though the company had said at the beginning of each of the two paragraphs "We insure against loss by accident", etc., "We insure against loss by intentional destruction," etc. We think the Stucker case is distinguishable and not persuasive on the point under consideration.[2]

As we view the insurance policy it is not ambiguous. The loss in question is covered thereby in Clause A and is unaffected by Clause B. Even if we assume that one of the constructions that might be placed on the insurance contract is that Clause B does limit Clause A, it would not aid defendant, for in so far as this insurance contract may be open to different constructions that one most favorable to the insured must be adopted. Thompson v. B & G Wrecking & Supply Company, supra.

Defendant next suggests plaintiff should not be permitted to recover because in her petition she stated Clause B was the applicable provision with respect to the extent of coverage. Plaintiff alleged the purchase of the insurance policy in question, charged "that the defendant has breached the contract by refusing to pay the plaintiff said $1,500.00," and stated all the essential facts for a recovery under Clause A. Defendant itself attached the entire policy to its answer, made it a part thereof; admitted it was in full force and effect, denied that Clause B provided coverage "and further states that other applicable provisions are contained in the said policy of insurance * * *." The case was fully and carefully tried to the court who ruled Clause A was the controlling clause on liability. In its motion for new trial defendant did not assign as error its contention that plaintiff changed its theory of recovery, contenting itself with the general allegation that upon the face of the pleadings (includings its answer which incorporated the entire insurance policy) the defendant was not entitled to any relief. De-

---

2. In the retrial of the Stucker case, 222 Ark. 268, 258 S.W.2d 544, the facts were detailed showing the horse which was purchased for $50 and insured for $1,000 had only a muscle injury which was not stated to be a mortal injury, and the insurer refused to give consent to its destruction.

fendant did not claim surprise or demonstrate prejudice. Nor has defendant assigned its contention of change of theory as one of its points relied on in its brief in this court. We find no merit in defendant's present contention that the trial court committed reversible error in its finding of liability under Clause A of the contract or that defendant is precluded from relying upon that finding on appeal.

The judgment is affirmed.

All concur.