GENE KAUFFMAN SCHOLARSHIP FOUNDATION, INC., Respondent,

v.

Mark PAYNE and Mark Payne as next friend of Samantha M. Payne; Appellant Pro Se

Jeremiah W. (Jay) Nixon, Attorney General for The State of Missouri, Respondent.

No. WD 65549.

Missouri Court of Appeals, Western District.

Feb. 14, 2006.

Mark Payne, Princeton, pro se.

Lloyd A. Cleaveland, Chillicothe, Counsel, Allison M. Murdock, Kansas City, Elizabeth J. Gray, St. Louis, Co-Counsels for Kauffman.

Robert L. Ortbals, Jr., Jefferson City, Counsel for Nixon.

Before: ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE and JOSEPH M. ELLIS, JJ.

ROBERT G. ULRICH, Presiding Judge.

Gene Kauffman Scholarship Foundation, Inc. (the Foundation), a Missouri

not for Profit Corporation, filed its "Petition for Declaratory Judgment and Trust Construction" in the Probate Division on November 18, 2004, seeking the court's construction of the Edward E. Kauffman Revocable Trust (Revocable Trust), as amended, and the Gene Kauffman Scholarship Foundation Trust (Foundation Trust). Both trusts had been registered in the Probate Division. Specifically, the Foundation sought concurrence by the court of the Foundation's definition and application of the term "high school graduate," a term used within the revocable trust to limit recipients of the trust benefits. Jeremiah W. Nixon, the Attorney General, was named in his official capacity as the sole defendant because of the assertion that the trusts are charitable. Mark A. Payne, as next friend of Samantha M. Payne, filed his motion to intervene, asserting that the Foundation's definition of the term errantly had excluded Samantha as a beneficiary and that the Foundation had wrongly denied her benefits of the trust. Both the Foundation and the Attorney General opposed Mr. Payne's motion to intervene. While Mr. Payne's motion was pending, the Attorney General consented to the entry of a judgment and order granting the relief prayed by the Foundation, and the court entered the consent judgment, which included the denial of Mr. Payne's Petition for Intervention. Mr. Payne appealed both the denial of his Petition to Intervene and the consent judgment.

### Facts

The facts are not disputed. On July 17, 1990, Edward E. (Gene) Kauffman created the Edward E. Kauffman Revocable Trust, as amended by Amendment to Revocable Trust Agreement dated July 22, 1991, and Second Amendment to Revocable Trust Agreement dated May 18, 1992. Gene Kauffman died on October 28, 1997. The Kauffman Revocable Trust was filed in the Livingston County Court, Probate Division on October 7, 1998, and was recorded on December 10, 1998, in accordance with section 456.410 RSMo. The Foundation Trust, dated November 3, 1998, is a charitable trust established in accordance with subparagraph E of paragraph SIXTH of the Kauffman Revocable Trust, which states:

My SUCCESSOR TRUSTEE shall establish with the remainder of this trust estate a not-for-profit corporation to be entitled "GENE KAUFFMAN SCHOLARSHIP FOUNDATION, INC." which shall provide financial assistance toward college and university expenses for needy, unmarried, non-smoking female *high school graduates* of Mercer County, Missouri, to help them pursue their higher education. Said Scholarship Fund shall be administered by a scholarship committee consisting of at least five civic-minded persons who must be landowners and legal residents of Mercer County, Missouri. However, the principals of each high school in Mercer County, Missouri shall be members of such committee. * * * Said committee shall adopt reasonable rules and guidelines not inconsistent with the provisions hereof ... (Emphasis added)

The third paragraph of the Foundation Trust states:

*Purpose of Trust.* This trust is created and shall be operated exclusively to make grants to Gene Kauffman Scholarship Foundation, Inc., to enable Gene Kauffman Scholarship Foundation, Inc. to satisfy its charitable and educational purpose of providing financial assistance toward college or university expenses for needy, unmarried, non-smoking, female, high school graduates of Mercer County, Missouri, to help them pursue their higher education ...

All of the remaining assets of the Revocable Trust were transferred to the Foundation Trust, and the Revocable Trust was terminated on December 31, 2003. The Foundation Trust was filed with the Circuit Court of Livingston County, Probate Division on September 3, 2004, in accordance with section 456.410 RSMo.

The scholarship committee, on behalf of the Foundation Trust, established the rule that the term "high school graduate" as used in subparagraph E of paragraph SIXTH of the Revocable Trust, as amended, does not include persons who are, or have been home schooled, or persons who have received general equivalency diplomas. "Home schooled," the committee determined, means persons who were home schooled and who did not attend at least two years of high school in Mercer County Schools, with at least one of the two years being the senior year.

Samantha M. Payne applied to the Foundation Trust for a scholarship on or about May 18, 2004. The Foundation denied her a scholarship on August 27, 2004, solely because she was home schooled. That she met all other scholarship eligibility criteria as set forth by the Revocable Trust except that the Foundation claimed that she was not a high school graduate as defined by its definition is not disputed. Except for the issue of what constitutes a high school graduate within the meaning of the Foundation Trust, Samantha is the only applicant ever to have met all scholarship eligibility criteria, and been denied a scholarship.

The Foundation Trust filed its "Petition for Declaratory Judgment and Trust Construction" on September 10, 2004, requesting that the court declare and construe that the provisions of the Revocable Trust and the Trust Agreement of Foundation Trust, dated November 3, 1998, exclude persons who were home schooled and who did not attend at least two years of high school in Mercer County Schools, with at least one of the two years being the senior year of high school, and exclude persons who have obtained general equivalency diplomas (GED) from the definition of the term "high school graduates" contained within the Trust. The Attorney General was considered a necessary party and named Defendant.

Mr. Payne filed his Petition for Intervention as next friend for his daughter Samantha. The Attorney General and the Foundation opposed Mr. Payne's Petition for Intervention on the basis that he lacked standing because (1) he had not been appointed as his daughter's next friend as required by Rule 52.02, and (2) neither he nor his daughter had an identifiable interest in any of the proceeds of the Foundation Trust, and, alternatively, any interest that they may have is adequately protected by the Attorney General. The court appointed Mr. Payne as his daughter's next friend.

The Attorney General served written discovery on the Foundation and, after receiving verified response, filed Consent to Judgment. The court issued its Judgment and Order on May 6, 2005, denying Mr. Payne's petition to intervene, stating that "the interests of the parties are adequately represented by the Attorney General of the State of Missouri and, therefore, the Court finds that Mark A. Payne and Samantha M. Payne have no standing herein and their request to intervene in this action is denied." The court further ordered that the provisions of the Foundation Trust be construed to "exclude persons who were home schooled and who did not attend at least two years of high school in Mercer County Schools, with at least one of the two years being the senior year and persons who have obtained general equivalency diplomas from the definition of

the term 'high school graduates'." This appeal was then filed.

## Points on Appeal

Mr. Payne, as next friend for his daughter Samantha, asserts two points on appeal. His first point asserts that the trial court erred in denying his intervention for lack of standing because he offered sufficient evidence to identify his daughter as an individual with a "special interest" in that she belongs to a small class of identifiable beneficiaries and is a person who is "certain to receive trust benefits." In his second point, Mr. Payne asserts that the court erred in its order declaring and construing the provisions of the Revocable Trust to exclude persons who were home schooled and persons who have obtained general equivalency diplomas from the definition of the term "high school graduates" contained therein because he offered sufficient evidence to show that the term "high school graduates" does not exclude home schooled individuals. The first point is dispositive.

## Standing to Sue

Mr. Payne's first point charges that the trial court erred in denying his motion to intervene and its declaration that his daughter had no standing to sue. He claims that he evinced his daughter's "special interest," which qualifies her as a proper party to enforce the provisions of the Foundation Trust.

## Standard of Review

■ "Denial of a motion for leave to intervene as a matter or right under Rule 52.12 will be affirmed by an appellate court unless there is no substantial evidence to support it, it is against the weight of the

evidence, or it erroneously declares or applies the law." *In re Liquidation of Prof'l Med. Ins. Co.*, 92 S.W.3d 775, 778 (Mo. banc 2003)(quoting *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 126 (Mo. banc 2000); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Discussion

The parties agree that the Foundation Trust is a charitable trust. Mr. Payne claims in his first point to have offered sufficient evidence to demonstrate that his daughter has standing to intervene in that he showed that his daughter has a "special interest" in the Foundation Trust because she belongs to a small class of identifiable beneficiaries and, as an identifiable beneficiary, she is "certain to receive trust benefits." He claims as a part of the point that (a) the judge addressed the wrong issue when she found the interest of the parties "adequately represented by the Attorney General," and (b) the judge did not rule on whether Samantha was qualified as an individual with a "special interest." The claims are considered together.[1]

Mr. Payne filed a motion to intervene, attempting to invoke the provisions of Rule 52.12(a)(2), which states:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

1. Mr. Payne's third item referenced in the first point, that the judge should have allowed standing in that Samantha belongs to a small class of identifiable beneficiaries and is a person "certain to receive trust benefits," is redundant.

In *American Tobacco*, the Supreme Court held:

> In the absence of a statute conferring an unconditional right of intervention, an applicant seeking intervention must file a timely motion and "show three elements: (1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." The proposed intervenor carries the burden of establishing the presence of all three elements required for intervention as a matter of right. When an applicant satisfies these elements, however, the right to intervene is absolute and the motion to intervene may not be denied.

*Am. Tobacco*, 34 S.W.3d at 127 (internal citations omitted.)

█ Application of Rule 52.12 is not exclusive, however, when the person seeking intervention desires to enforce or challenge a charitable trust. The case of *State ex rel. Nixon v. Hutcherson*, 96 S.W.3d 81 (Mo. banc 2003), is on point and is controlling. A decedent had created a trust by her will "to be used for the higher education of capable children of Ray and Carroll Counties, Missouri, especially those whose parents are unable, financially, to provide such education." *Id.* at 82. The plaintiffs sought and obtained class certification as provided by Rule 52.08 to proceed as representatives of a class identified as students and adults for students more particularly identified as beneficiaries of the trust. *Id.* at 83. The Supreme Court determined that the trust at issue was a charitable trust and reviewed whether the trial court had errantly failed to dismiss the action seeking to enforce certain provisions of the charitable trust created by execution of the will. The Supreme Court noted that the Attorney General of the State has a duty to enforce the provisions of a charitable trust and that charitable trusts are generally not enforceable by potential beneficiaries or members of the general public. *Id.* at 85. The Court addressed the reason that the Attorney General is the proper party to enforce a charitable trust:

> The persons affected by such trusts are usually some or all of the members of a large and shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee would frequently be subjected to unreasonable and vexatious litigation. Often no individual can prove that he will necessarily benefit from the charity. All may be prospective or possible beneficiaries, but no one can be said to be a certain recipient of aid. In ultimate analysis it is the public at large which benefits, and not merely the individuals directly assisted. Obviously, there is good reason for vesting in a single authority the discretion and power incident to the enforcement of such trusts, rather than in leaving the matter to the numerous, changing, and uncertain members of the group directly to be aided.

*Id.* at 84 (quoting GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 411, p. 8 (rev.2d ed.1991)).

An exception to the rule that the Attorney General is the proper party to enforce charitable trusts, the Court noted, exists where "[a] person ... has a 'special interest' in the performance of a charitable trust." *Id.* Then the person "can maintain an action for its enforcement." *Id.* The Court addressed what a "special interest" is:

> The test to determine whether such an interest is special enough to confer standing is whether the person "is enti-

tled to receive a benefit under the trust that is not merely the benefit to which members of the public in general are entitled." A person also may have standing if he or she is entitled to a preference under the terms of the trust or if the person is a member of a small class of identifiable beneficiaries, or if he or she is "certain to receive trust benefits." However, "[t]he mere fact that a person may in the discretion of the trustee become a recipient of the benefit under the trust does not entitle him to maintain suit for the enforcement of the trust." "As a general rule no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive charitable or other benefits from the operation of the trust."

*Id.* (internal citations omitted).

The Court determined in *Hutcherson* that the putative class representatives and the individual plaintiffs could not satisfy the burden of showing a clear, identifiable, and present claim to any benefits from the Trust sufficient to establish a "special interest." *Id.* at 85. The Court stated that potential interest that is no greater than the interest of all of the other members of the putative class was not sufficient to prove a special interest. *Id.*

█ Like in *Hutcherson*, Mr. Payne, in behalf of his daughter, seeks to enforce the provisions of the Foundation Trust. He desires to compel the Trustees to include Samantha as a member of the potential beneficiaries. He claims that she has a "special interest" that qualifies her to intervene. Mr. Payne claims that the special interest is that if she is included as a potential beneficiary, she will be awarded a scholarship because everyone who has applied and been qualified for consideration has received a scholarship.

The Trust provides that the Trustees exercise discretion in awarding scholarships. At best, Samantha would be a potential beneficiary. She is not certain to receive Trust benefits. Even if Samantha were a person that might, in the discretion of the Trustees, become a recipient of a scholarship under the Trust provisions, she would not be entitled to sue to enforce the trust. *Id.* at 83 (citing IVA AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS § 391, p. 373 (4th ed.1989)). Samantha cannot sue to enforce the charitable trust merely on the ground that she believes she is within the class to be benefited by the trust and that she would receive charitable or other benefits. *Id.* Samantha does not have a special interest that permits her to sue to enforce the trust.

### The Attorney General was the Proper Party Defendant

The Trustees determined that Samantha is not a potential beneficiary because she has not ever been a student at a high school within Mercer County as they interpret the Trust to require. The scholarship committee, in behalf of the Trustees of the Revocable Trust, as amended, interpreted subparagraph E, paragraph SIXTH of the Revocable Trust and established the rule of interpretation that the term "high school graduate" as used in the paragraph does not include persons who are, or have been home schooled, or persons who have received general equivalency diplomas. "Home schooled," the committee determined, means persons who were home schooled and who did not attend at least two years of high school in Mercer County Schools, with at least one of the two years being the senior year.

█ The Trustee's declaratory judgment action sought judicial declaration

that their interpretation of the Trust was correct, and they named the Attorney General as a defendant. The Attorney General represents "the public and the public interest in respect to matters involving enforcement of public charitable trusts." *Id.* at 84 (quoting *German Evangelical St. Marcus Congregation of St. Louis v. Archambault,* 404 S.W.2d 705 (Mo.1966)). The Attorney General is the proper entity to enforce charitable trusts within this state and was a proper party defendant in this case. The uncontroverted evidence is that the Attorney General responded as duty required, obtained discovery to educate himself regarding the Trust, and ultimately concurred in the consent decree.

### Request for Reimbursement and Attorney Fees

Although not a point on appeal, Mr. Payne asks this court to order the Foundation Trust to reimburse him the costs of the action and "for such other orders as the court deems proper" because he has attempted to assist his daughter and is not an attorney and has incurred expense for research and writing. He has cited no authority supporting his request for costs plus compensation for time spent learning the law and preparing the case in behalf of his daughter, essentially a request for attorney fees.

■ The concept of "costs" did not exist at common law and was created by statute. *Starling v. Union Pac. R.R. Co.,* 22 S.W.3d 213, 216 (Mo.App. W.D.2000). Statutes allowing the taxation of costs are strictly construed. *Id.* Courts have "no inherent power to award costs, which can only be granted by virtue of express statutory authority." *Id.* (quoting *Dorn–Chrysler Plymouth, Inc. v. Roderique,* 487 S.W.2d 48, 49 (Mo.App.1972)). Section 514.060, RSMo 2000, states that "[i]n all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." *See also* Rule 77.01; § 514.110, RSMo 2000. Mr. Payne has not prevailed. His request for costs is denied.

■ Mr. Payne also asks for attorney fees. Missouri follows the "American Rule." Absent statutory authorization or contractual agreement, each litigant, with few exceptions, bears the expense of his own attorney fees (American Rule). *Mayor, of City of Liberty v. Beard,* 636 S.W.2d 330, 331 (Mo. banc 1982). Mr. Payne cites Rule 87.09 as authority for receiving the costs of litigation. Rule 87.09 is nearly identical to the language in section 527.100 RSMo. In *Beard,* the Court held that the language of section 527.100, which authorizes the award of costs in declaratory judgment actions, does not provide a statutory basis for the award of attorney fees. *Id.* at 331. *See also Strickland v. Bryant,* 846 S.W.2d 788, 789–90 (Mo.App.1993)(citing *Washington Univ. v. Royal Crown Bottling Co. of St. Louis,* 801 S.W.2d 458, 468 (Mo.App.1990)) *("The Supreme Court in Mayor ... held that 'costs' in § 527.100 did not automatically include attorney's fees. The court specifically rejected the broad interpretation ... that 'costs'· in declaratory judgment actions include attorney's fees.").*

Mr. Payne also has failed to follow the proper procedure for requesting reimbursement. This Court's Rule XXIX requires any party seeking the award of attorney fees to file a separate written motion *before* submission of the cause. Western District Rule XXIX. Mr. Payne's request for attorney fees is denied.

### Conclusion

The trial court properly denied Mr. Payne's motion to intervene. Having no standing to sue the Foundation Trust, he

has no standing to appeal the trial court's judgment. The appeal is dismissed.

BRECKENRIDGE, J. and ELLIS, J. concur.