308 S.W.3d 748 (2010)
In re The Creation of the CLARKSON KEHRS MILL TRANSPORTATION DEVELOPMENT DISTRICT,
Lawrence F. Behymer, Sr. Marital Trust Dated June 7, 1994 and
Schnuck Markets, Inc., Petitioners/Respondents,
v.
City of Ballwin, Missouri and
St. Louis County, Missouri and
Missouri Highways and Transportation Commission, Respondents/Respondents,
v.
Robert Minbole, et al., Movants/Appellants.
No. ED 93691.
Missouri Court of Appeals, Eastern District, Division Two.
April 27, 2010.
*750 James E. Merlo, St. Louis, MO, for Petitioners/Respondents.
Robert E. Jones, St. Louis, MO, for Respondent/Respondent, City of Ballwin, Missouri.
Stephanie L. Hill, St. Louis, MO, for Respondent/Respondent, St. Louis County.
Ardita Roark, Jefferson City, MO, for Respondent/Respondent, Missouri Highways and Transportation Commission.
Michael P. Stephens, Sarah J. Swoboda, Stephen L. Kling, Jr., St. Louis, MO, for Movants/Appellants, Robert Minbole, et al.
SHERRI B. SULLIVAN, P.J.

Introduction
Appellants, Robert Minbole, et al. (Movants), appeal from the trial court's judgment denying their Motion to Intervene *751 and their Motion to Set Aside Judgment. We affirm in part, and dismiss in part.

Factual and Procedural Background
The Lawrence F. Behymer, Sr. Marital Trust (the Trust) is the owner of approximately 4.26 acres of land (the Property) located at the intersection of Clarkson and Kehrs Mill Roads in Ballwin, Missouri. Schnuck Markets, Inc. (Schnuck) has a contract to purchase the Property from the Trust and anticipates constructing a supermarket on the Property.
On July 15, 2009, the Trust and Schnuck (collectively Petitioners) filed a Petition in the Circuit Court of St. Louis County seeking to create a Transportation Development District (TDD) under the Missouri Transportation Development District Act (TDD Act), Sections 238.200 through 238.275 RSMo 2006. The TDD, known as the Clarkson Kehrs Mill Transportation Development District (the District), is comprised exclusively of the Property. The Trust is the owner of all of the real property in the District and there are no persons eligible to be registered voters residing within the District's boundaries.
The City of Ballwin (the City), St. Louis County (the County), and the Missouri Highways and Transportation Commission (the Commission) were named as respondents to the Petition. The City and County are necessary parties under the TDD Act as local transportation authorities, and the Commission is a necessary party as the authority responsible for constructing and maintaining the Missouri highway system. Section 238.202.1(4)[1], Section 238.207.4(2).
Petitioners sought to create the District for the purpose of funding a transportation project (Transportation Project). The proposed Transportation Project activities include:
(a) construction of a dedicated northbound right-turn lane (deceleration lane) on Clarkson Road in advance of the proposed right-turn only drive;
(b) construction of a raised median within Clarkson Road to restrict the driveway to right turns only and still allow left turns into and out of the existing National City Bank driveway;
(c) provision of dual southbound left-turn lanes on Clarkson Road at Kehrs Mill Road and the widening of Kehrs Mill Road to West Par Drive to provide two eastbound lanes;
(d) extension of the northbound right-turn lane on Clarkson Road at the Kehrs Mill Road signal;
(e) implementation of a crosswalk and pedestrian signal on the south leg of the intersection of Clarkson and Kehrs Mill Road so as to accommodate pedestrians between Marquette High School and the proposed store;
(f) construction of sidewalks along those portions of Clarkson Road and Kehrs Mill Road that are adjacent to the boundaries of the District; and
(g) construction of related curb cuts, road and landscape improvements within and adjacent to the boundaries of the District along Clarkson Road and Kehrs Mill Road.
The estimated cost of the Transportation Project is approximately $2 million, for which the Petitioners sought to be paid through the imposition of a TDD sales tax (Sales Tax). Upon authorization by the District's qualified voters, the District's Board of Directors, comprised of three representatives of the developer and two city officials, could adopt a resolution imposing a Sales Tax between one-eighth of *752 one percent and one percent in the District. Sections 238.235.1(1), 238.235.1(7). Since no persons eligible to be registered voters live within the District's boundaries, the Trust, as the sole owner of land in the District, is the only qualified voter. Section 238.202.2(2). The Sales Tax could be levied on the receipts from the retail sales of all tangible personal property or taxable services within the District. Section 238.235.1(7).
The City, County, and Commission filed separate answers to the Petition, each stating it did not oppose the creation of the District. On August 11, 2009, the trial court held a hearing on the Petition, and entered its Judgment and Order (the TDD Judgment) organizing the District. The parties did not appeal the Judgment.
On August 14, 2009, Movants filed a Motion to Intervene in the action as a matter of right under Rule 52.12(a).[2] Movants also filed a Motion to Set Aside Judgment, arguing the trial court should set aside the TDD Judgment and order a public hearing to give Movants an opportunity to voice their concerns with the proposed District and the Sales Tax. Petitioners and the City filed memoranda in opposition to the Movants' motions. After a hearing, the trial court entered its Judgment and Order denying Movants' motions. This appeal follows.

Points Relied On
In their first point on appeal, Movants argue the trial court erred in denying their Motion to Intervene as of right because the denial is unsupported by substantial evidence, is against the weight of the evidence and/or erroneously declares the law, in that Movants established: (1) their interest in the underlying action, (2) that the disposition of the underlying action impaired or impeded Movants' interest, and (3) that no party to the underlying action was adequately protecting Movants' interest, thereby establishing their absolute right to intervene pursuant to Rule 52.12(a)(2).
In their second point on appeal, Movants argue the trial court abused its discretion in denying their Motion to Set Aside Judgment and for Public Hearing, in that Movants established that good cause existed for the trial court to set aside the TDD Judgment and that no inconvenience to the court or unfair advantage to any party would result from the trial court granting their motion to hold a public hearing to allow the introduction of material evidence.

Standard of Review
This Court will affirm the trial court's denial of a motion to intervene unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. State ex rel Nixon v. American Tobacco Co., Inc., 34 S.W.3d 122, 126 (Mo. banc 2000). In reviewing the denial of intervention, we consider the facts in the light most favorable to the trial court's judgment. Kinney v. Schneider Nat. Carriers, Inc., 200 S.W.3d 607, 610 (Mo.App. W.D.2006).

Discussion

Point I  Motion to Intervene
To intervene as a matter of right under Rule 52.12(a)(2), the intervenor must show: (1) an interest in the subject matter; (2) disposition of the action may impede its ability to protect that interest; and (3) the applicant's interest is not adequately represented by the existing parties. Rule 52.12(a)(2); Ring v. Metropolitan St. Louis Sewer Dist., 41 S.W.3d 487, *753 491-92 (Mo.App. E.D.2000). The trial court may deny the applicant's motion to intervene if any one of these requirements is not met. LeChien v. St. Louis Concessions, Inc., 33 S.W.3d 602, 603-04 (Mo. App. E.D.2000). However, if the intervenor meets all of the requirements, the right to intervene is absolute. Borgard v. Integrated Nat. Life Ins. Co., 954 S.W.2d 532, 535 (Mo.App. E.D.1997).

Interest in the Underlying Action
Movants contend that the trial court erred in denying their motion to intervene because they established all the required elements, including their interest in the underlying action.

A. The Proposed Improvements
First, Movants argue they have an interest in the underlying action because, as the residents closest to the District, they will be affected by the Transportation Project improvements to be constructed by the District. Schnuck argues that Movants may not raise this issue on appeal because they failed to advance this purported interest in the trial court. In their reply brief, Movants contend they asserted this interest in their Motion to Intervene by alleging, in one paragraph of their motion, that they were seeking to intervene "due to their interest as neighboring residents of the Proposed District and their interest as the taxpayers who ultimately will be required to fund the District." This allegation, however, makes no mention of opposition to the proposed improvements but is just an allegation that Movants have an interest as a neighboring resident and as a potential taxpayer. Movants also contend they raised the issue by stating in their Memorandum in Support of their Motion to Intervene that "Movants do not desire and have not requested any such improvements and oppose all of them." However, this is the only statement of this kind in any of Movants' filings and was made only in reference to Movants' argument that the proposed District was unjust or unreasonable. It cannot be said that these sort of vague, passing, and unrelated references suffice to raise Movants' specific interest in the proposed Transportation Project before the trial court. Movants never presented to the trial court their claimed interest in the improvements proposed as part of the Transportation Project and we will not review a matter that was not presented to the trial court. Woods v. Friendly Ford, Inc., 248 S.W.3d 699, 704 (Mo.App. S.D.2008).

B. Potential Taxpayers
Next, Movants argue that they have an interest in the TDD Judgment in the underlying action because, as the residents closest to the District, they will be the ones most likely to pay a Sales Tax levied in the District.
To intervene as a matter of right, Movants' interest in the action must be "a direct and immediate claim to, and have its origin in, the demand made or the proceeds sought or prayed by one of the parties to the original action." LeChien, 33 S.W.3d at 604. "[T]he interest must be so immediate and direct that the would-be intervenor will either gain or lose by the direct operation of the judgment that may be rendered therein." Borgard, 954 S.W.2d at 535. It does not include a consequential, remote or conjectural possibility of being affected as a result of the action. American Tobacco Co., 34 S.W.3d at 128.
Here, the TDD Judgment organized the Property into a TDD, a political subdivision. Movants concede that the TDD Judgment does not impose or set the rate *754 of a sales tax. Therefore, it cannot be said that the Movants, as taxpayers, gain or lose by the direct operation of the TDD Judgment and the formation of the District.
Movants' alleged taxpayer interest is speculative and based on conjecture. Their interest as potential taxpayers will only come to fruition if, and when, the qualified voters authorize the District's Board of Directors to levy a Sales Tax; the District's Board adopts a resolution to impose a Sales Tax; the proposed transportation improvements are constructed; the proposed commercial development is constructed; and Movants utilize the proposed improvements to access the development to purchase goods, which are then taxed.
Notably, Movants concede that the proposed Sales Tax would not affect their property or the City as a whole. Instead it is a Sales Tax placed only on those items sold in the District, which is to be used to pay for improvements to the transportation infrastructure to accommodate the development in the District. Movants premise their alleged taxpayer interest on the fact that they are in close proximity to the District, yet they provide this Court with nothing more than proximity to support their assertion that they are the group most likely to be affected by the proposed Sales Tax. Quite simply, Movants will only have to pay the Sales Tax if they choose to utilize the improvements to access the development of which they complain.
We find that Movants, as future potential taxpayers, do not have an interest constituting a direct and immediate claim to the subject of the underlying action, the formation of the District into a political subdivision by the TDD Judgment, to implicate intervention as a matter of right.

C. Public Hearings Pursuant to Section 238.212
Movants also argue that the TDD Act establishes that they have an interest sufficient to support their right to intervene because Section 238.212 provides for public hearings.
At the time of the TDD Judgment, Section 238.212 allowed the circuit court to order a public hearing on the creation and funding of a proposed district, if the court deemed a hearing appropriate. Section 238.212.2. In 2009, the legislature amended the statute to include a requirement that the court order at least one public hearing on these issues when the TDD is proposed by only the record property owners. Section 238.212.2 RSMo Supp.2009.
Movants contend that Section 238.212.2 establishes that they have an interest in the underlying action, in that the 2008 version allowed for public hearings and the newly revised version requires a hearing when, as in this case, a TDD is proposed by only the record property owners. Here, it is clear that the 2008 statute was in effect when the TDD Judgment was entered and, therefore, a public hearing was only discretionary. However, regardless of whether a public hearing is discretionary or required, we find that Section 238.212.2 does not vest Movants with an interest in the underlying action sufficient to support a right to intervene.
Movants' bald assertion that the public hearing provisions vests them with an interest in the action seemingly suggests that "the public," i.e. anyone and everyone, is vested with an "interest" in the TDD, no matter how remote or attenuated an individual's actual interest in the action. Nothing in Section 238.212.2 suggests that an intervenor should not have to meet the requirements of Rule 52.12, including the requirement that the would-be intervenor *755 establish that he have an interest in the action in which he seeks to intervene.
Movants' contention that Section 238.212.2 is an explicit recognition that they have standing to appear and be heard on the formation of a TDD is without support, and is inconsistent with Movants' position at trial and on appeal. Rule 52.12(a)(1) provides for intervention as of right when a statute confers an unconditional right to intervene. Movants do not seek to intervene on this basis most likely because it is clear that Section 238.212.2 does not confer a statutory right to intervene; a right which the legislature could have conferred had it so desired. Instead, Movants attempt to circumvent this logistical hurdle by arguing that, instead of providing a statutory right to intervene, the statute explicitly provides an interest to certain unnamed members of the public sufficient to warrant intervention as a matter of right. Movants assert that the required public hearings are intended to increase public awareness and involvement, yet provide no support for their assertion that this translates into a personal interest in the formation of the TDD sufficient to justify their intervention.

D. Hancock Amendment
Finally, Movants argue that they have an interest in the TDD Judgment because it violates the Hancock Amendment as a tax levied without voter approval, and Article 10, Section 23 of the Missouri Constitution grants taxpayers the authority to bring a private right of action for enforcement of the Hancock Amendment. We disagree.
Article 10, Sections 16 through 24 of the Missouri Constitution are better known as the Hancock Amendment. Mo. Const. art. X, sec. 16-24. Section 22 provides that:
Counties and other political subdivisions are hereby prohibited from levying any tax . . . or from increasing the current levy of an existing tax . . . above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. Mo. Const., art. X, sec. 22(a).
The purpose of the amendment is "`to limit taxes by establishing tax and revenue limits and expenditure limits for the state and other political subdivisions which may not be exceeded without voter approval.'" Rohrer v. Emmons, 289 S.W.3d 600, 603-04 (Mo.App. E.D.2009), quoting Buchanan v. Kirkpatrick, 615 S.W.2d 6, 13 (Mo. banc 1981).
Article 10, Section 23 of the Constitution gives taxpayers standing to enforce the Hancock Amendment in the courts. Mo. Const., art. X, sec. 23; Buchanan, 615 S.W.2d at 13. However, enforcement of the Hancock Amendment is subject to the procedures established by statute. Koehr v. Emmons, 98 S.W.3d 580, 582 (Mo.App. E.D.2002). Taxpayers must follow the statutory mechanisms for protesting taxes when a tax is challenged on a constitutional basis. Id. at 583. Generally, to enforce the Hancock Amendment a taxpayer may (1) seek an injunction, enjoining the collection of the challenged tax until the constitutionality of the tax is determined; or (2) seek a refund of a tax increased and collected in violation of Hancock through a timely action. Id. at 582-83.
Here, Movants seek to intervene in the underlying action creating the District because the District may, at some point in the future, impose a sales tax on items sold inside the District. Movants neither seek to enjoin the District from implementing a *756 sales tax, nor seek a refund of a tax collected illegally. Movants have not complied with the statutory procedures required for enforcement of the Hancock Amendment. See Koehr, 98 S.W.3d at 582-83.
In sum, Movants have failed to show that they have a direct and immediate interest in the underlying litigation. Because Movants have not established an essential element for intervention in the action as a matter of right, we need not address whether Movants' alleged interest was impaired or impeded or whether a party to the action adequately represented Movants' alleged interest. The trial court's judgment denying Movants' Motion to Intervene is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Movants' Point I is denied.

Point II  Motion to Set Aside Judgment
In their second point, Movants argue the trial court abused its discretion in denying their Motion to Set Aside Judgment and for Public Hearing pursuant to Section 238.212. Having affirmed the trial court's denial of Movants' Motion to Intervene, Movants are not parties to the underlying litigation and, therefore, lack standing to appeal from the trial court's judgment denying their Motion to Set Aside Judgment and for a Public Hearing. Gene Kauffman Scholarship Foundation, Inc. v. Payne, 183 S.W.3d 620, 627-28 (Mo.App. W.D.2006) (finding a party has no standing to sue and no standing to appeal when the trial court properly denies the party's motion to intervene); see Eckhoff v. Eckhoff, 242 S.W.3d 466, 468-69 (Mo.App. W.D.2008) ("Where a movant's motion to intervene is denied, the movant lacks standing to appeal from any subsequent order or judgment in the proceeding."). Movants' Point II is dismissed.

Conclusion
The judgment of the trial court denying the Motion to Intervene is affirmed and Movants' appeal of the judgment denying their Motion to Set Aside Judgment is dismissed for lack of standing.
ROBERT G. DOWD, JR., and PATRICIA L. COHEN, JJ., concur.
NOTES
[1] All statutory references are to RSMo Supp. 2008, unless otherwise indicated.
[2] All rule references are to Mo. R. Civ. P.2009, unless otherwise indicated.