**IN RE: The Matter of: A.A.M. BY Next Friend J.D.S. and J.D.S., Individually, Petitioners/Respondents.**

No. ED 103770

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: June 20, 2017

Joyce A. Pyatt, 10626 Highway 21, P.O. Box 207, Hillsboro, MO 63050-0207, For Petitioners/Respondents.

Alan E. Freed, Lisa G. Moore, 165 N. Meramec, Suite 110, Clayton, MO 63105, For Appellants, John and Mary Verner.

SHERRI B. SULLIVAN, P.J.

## Introduction

John and Mary Verner (the Verners) appeal from the trial court's judgment declaring J.D.S. (Father) the biological father of A.A.M. (Child) and awarding physical custody of Child to Father and legal custody to Father and Father's mother (Grandmother) on Father's Petition for Declaration of Paternity.[1] We affirm.

## Factual and Procedural Background

Child was born on April 3, 2012. At the time of Child's birth, Mother was married to K.M., the putative father. On or about May 17, 2012, Child was removed from Mother's home and taken into protective custody in cause number 12JE-JU00301 (juvenile action). Child was placed in the

---

1. There are six outstanding motions filed by the parties, (1) Father's Amended Motion to Dismiss (for lack of standing), (2) Father's Motion to Supplement the Legal File (guardianship and juvenile proceedings); (3) Father's second Motion to Supplement the Legal File (filings from the independent action for third-party custody and visitation filed by the Verners in 2017); (4) the Verners' Motion to Strike Pleadings (certain paragraphs contained in Father's first Motion to Supplement the Legal File); (5) the Verners' Motion to Strike Father's Legal File and Brief (references to juvenile proceeding); and (6) the Verners' Motion to Supplement the Legal File (final judgment in guardianship action). Father's first Motion to Supplement the Legal File is granted as to the portion of the supplemental legal file related to the guardianship action filed by the Verners because the Verners previously consented to the inclusion of these documents in the record on appeal, but denied as to the portions related to the juvenile proceeding. The Verners' Motion to Strike Father's supplemental legal file and brief is granted as to any portion or arguments related to the juvenile matter. The Verners' Motion to Strike the Pleadings is granted as to the three specifically identified paragraphs in Father's first Motion to Supplement the Legal file. Father's Amended Motion to Dismiss and second Motion to Supplement the Legal File are denied. The Verners' Motion to Supplement the Legal File is granted.

temporary legal and physical custody of the Division of Family Services (Division), who placed Child with Janice Vail (Vail), one of Mother's aunts. The Verners, who are Child's maternal great-aunt and great-uncle, visited Child during her placement with Vail and initiated steps to adopt Child.

In March 2013, Father was named as Child's new putative father and on April 1, 2013, after paternity testing, was determined to be Child's biological father. In June 2013, Father began visitation with Child.

On June 5, 2013, the Verners filed a guardianship petition in 13JE-PR00270 (guardianship action) alleging Mother and Father were unfit, unable, or unwilling to assume the duties of guardianship.

On July 19, 2013, Father filed a Petition for Declaration of Paternity (paternity action) in the underlying case seeking to establish his paternity and an order granting him sole legal and physical custody of Child. The attorney serving as Child's guardian ad litem in the juvenile case was appointed for Child in the paternity action. On August 30, 2013, in the juvenile action, the Division placed Child in Father's physical custody and Child began residing with Father.

On October 2, 2013, the Verners filed their initial motion to intervene in the paternity action. The Verners alleged Father was disabled due to an automobile accident that left him with brain damage affecting his mental capacity, memory, mood, behavior and ability to function in daily life. The motion contained general allegations pursuant to Section 452.375.5[2] that Mother and Father were unfit; unsuitable; or unable to be custodians of Child and, alternatively, the welfare of Child demanded and it was in the best interest of Child for the Verners to be permitted the right to intervene in the paternity action and the court grant them physical and legal custody of Child or visitation rights to Child. The motion further sought to consolidate the three pending matters—the juvenile case; the guardianship case; and the paternity action—and requested the court order psychological testing and a custody evaluation prior to custody or visitation being awarded to any party. On October 30, 2013, the trial court held a hearing on the Verners' Motion to Intervene in the paternity action and denied the motion.

On December 2, 2013, the Verners filed a motion to reconsider their motion to intervene asserting Section 452.375.5 permits any person seeking third-party custody or visitation to petition the court to intervene. On December 5, 2013, the trial judge recused herself on her own motion and the case was assigned to another judge for further proceedings. On January 27, 2014, the trial court granted the Verners' motion to reconsider and, after a hearing, denied their motion to intervene.

On May 7, 2014, the court in the guardianship action granted the Verners' motion for psychological testing and ordered Father to undergo psychological and neuropsychological evaluations to be paid for by the Verners.

On December 11, 2014, the Verners filed an Amended Motion to Intervene and for Third-Party Custody. The Verners again alleged pursuant to Section 452.375.5 that Mother and Father were unfit; unsuitable; or unable to be custodians, and the welfare of Child demanded and it was in the best interest of Child that the Verners be granted custody or visitation with Child. The Verners requested consolidation of the pending cases and that the paternity court

2. RSMo Supp. 2011.

delay entry of a final judgment until after the juvenile case was complete.

On December 12, 2014, the juvenile case was dismissed. That day, the trial court in the paternity action issued a Temporary Order and Judgment of Paternity finding Father was Child's biological father and it was in the best interest and well-being of Child that her legal and physical custody be awarded to Father and that Mother receive supervised visitation.

On April 29, 2015, the guardianship and paternity actions were consolidated. On June 19, 2015, in the guardianship action, the Verners filed an Amended Motion to Release Full Neuropsychological and Psychological Evaluation seeking to have the experts' reports regarding Father released to them. The court denied the Verners' request for the full reports, releasing the experts' reports only to the guardian ad litem and Father's attorney and providing only the experts' conclusions to the Verners.

On August 19, 2015, the trial court denied the Verners' Amended Motion to Intervene in the paternity action.

On September 28, 2015, the Verners filed a Petition for Disqualification of Judge seeking to disqualify the trial court judge on the consolidated guardianship and paternity actions asserting the court's refusal to release the full contents of the medical reports regarding Father to them was prejudicial and denied them due process, and the court's comments demonstrated the court had prejudged the case.

On October 5, 2015, the court granted the Verners' Petition for Disqualification in the guardianship proceeding and denied the petition in the paternity action because the Verners were not a party to the case.

On November 5, 2015, Grandmother filed a Motion to Intervene in the paternity action and a request for joint legal custody

of child, which was granted. Also that day, the trial court entered its Judgment and Declaration of Paternity. The court found Father had limited physical ability due to injuries suffered from a car accident in 1992; however, based upon the court's observations; the evidence presented; and the guardian ad litem's investigation, the court found Father had no limitations affecting his ability to parent Child rendering him unwilling, unfit, or unable to parent Child. The court found Grandmother was willing, fit, and able to share legal custody decision making with Father, if necessary. The court found the best interest of Child required Father and Grandmother share joint legal custody and Father be awarded sole physical custody. The court found Father was willing, fit, and able to parent without the need to grant Grandmother or any other person joint physical custody rights.

This appeal follows.

## Points on Appeal

In their first point, the Verners argue the trial court erroneously declared and applied the law by allowing Grandmother to intervene while denying their Motion to Intervene because it deprived them of their rights to due process and equal protection.

In their second point, the Verners claim the trial court erroneously declared the law in denying them the right to intervene, in that the court incorrectly believed it could not question a parent's fitness pursuant to Section 452.375.5, and the court's unwillingness to consider evidence from the past is contrary to generally recognized principles of jurisprudence.

In their third point, the Verners maintain the trial court abused its discretion in denying their Motion for Disqualification because the court's comments and actions

suggested a partiality to a particular outcome, rendering the court incapable or unwilling to perform the tasks outlined by the child custody statute.

In their fourth point, the Verners argue the trial court abused its discretion in denying them permissive intervention.

## Discussion

### Points II and IV

At issue in this case is the interplay between Section 452.375.5, the third-party custody and visitation statute, and Rule 52.12,[3] the rule governing intervention.

Section 452.375 provides in relevant part:

5. Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

(1) Joint physical and joint legal custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint physical and joint legal custody award. The residence of one of the parents shall be designated as the address of the child for mailing and educational purposes;

(2) Joint physical custody with one party granted sole legal custody. The residence of one of the parents shall be designated as the address of the child for mailing and educational purposes;

(3) Joint legal custody with one party granted sole physical custody;

(4) Sole custody to either parent; or

(5) **Third-party custody or visitation:**

(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child. Before the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action;

(b) Under the provisions of this subsection, any person may petition the court to intervene as a party in interest at any time as provided by supreme court rule.

(Emphasis added).

Rule 52.12 allows for intervention by right and permissive intervention in a pending action. The rule states:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common; or (3) when the validity of a statute, regulation or constitutional provision of this state, or an ordinance or regulation of a governmental subdivi-

3. All Rule references are to Mo. R. Civ. P. 2015.

sion thereof, affecting the public interest, is drawn in question in any action to which the state or governmental subdivision or an officer, agency or employee thereof is not a party, the court may in its discretion notify the chief legal officer of the state or governmental subdivision thereof, and the state or governmental subdivision may in the discretion of the court be permitted to intervene, upon proper application.

The Verners' Amended Motion to Intervene does not specify whether they were seeking permissive intervention or intervention as of right. Instead, their motion was based on general accusations that Mother and Father were unfit; unsuitable; or unable to be a custodian of Child and, alternatively, that the welfare of Child demanded and it was in the best interest of Child that they be granted custody or visitation of Child.

■ In their second point on appeal, the Verners allege the trial court erred in denying them the "right to intervene" because the trial court incorrectly believed it could not question a parent's fitness pursuant to Section 452.375.5, and the court's unwillingness to consider evidence from the past is contrary to generally recognized principles of jurisprudence.[4] We will affirm the trial court's decision concerning intervention as a matter of right unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. State ex rel. Koster v. ConocoPhillips Co., 493 S.W.3d 397, 403 (Mo. banc 2016). In reviewing the denial of intervention, we consider the facts in the light most favorable to the trial court's judgment. In re Clarkson Kehrs Mill Transp. Dev. Dist., 308 S.W.3d 748, 752 (Mo. App. E.D. 2010).

■ Section 452.375 confers only a conditional right to intervene, Matter of Adoption of E.N.C., 458 S.W.3d 387, 403 (Mo. App. E.D. 2014), and the Verners present no argument that any statute confers upon them an unconditional right of intervention; thus, they have no right to intervene pursuant to Rule 52.12(a)(1).

■ In order to intervene as of right under 52.12(a)(2), the intervenor must demonstrate (1) an interest in the subject matter of the action; (2) disposition of the action may impede its ability to protect that interest; and (3) the intervenor's interest is not adequately represented by the existing parties. ConocoPhillips Co., 493 S.W.3d at 403. The trial court can deny the applicant's motion to intervene if any of the requirements are not met. LeChien v. St. Louis Concessions, Inc., 33 S.W.3d 602, 603 (Mo. App. E.D. 2000). However, if the intervenor meets all of the requirements, the right to intervene is absolute. In re Clarkson Kehrs Mill Transp. Dev. Dist., 308 S.W.3d at 752–53.

■ In a case involving child custody, an "interest" is defined as "a concern, which is more than mere curiosity, or academic or sentimental desire." In re Adoption of H.M.C., 11 S.W.3d 81, 90 (Mo. App. W.D. 2000). A person is "interested" in the outcome of a legal action when "he has a legal right which will be directly affected

---

4. It is difficult to discern what the legal basis is for the Verners' second point. In their point, they assert they were denied "the right to intervene" yet at oral argument they maintained their Amended Motion only sought permissive intervention. Notably, Father also appeared to believe Point II was a claim for intervention as of right and addressed that claim in his brief. The argument itself fails to analyze the applicable law or elements of either intervention as of right or permissive intervention. In attempting to reasonably address the Verners' claims, we will address any potential claims of intervention as of right in Point II and claims regarding permissive intervention in Point IV.

thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action." Id. The interest cannot be consequential or remote but an "immediate and direct claim upon the very subject matter of the action that the intervenor will either gain or lose by the direct operation of the judgment that may be rendered therein." Id.

The Verners failed to specifically address these elements both in their Amended Motion to Intervene and on appeal. However, at the hearings addressing their various motions to intervene, the Verners argued denying the motion would potentially place Child in legal limbo in the event the biological parents were found to be unfit and they wanted to participate in the proceeding to protect the interest of Child, which included challenging the fitness of the biological parents. The only "interest" set forth by the Verners in support of their intervention is that doing so is in Child's interest.

At no point have the Verners clearly articulated (1) *their* interest in the case; (2) how *their* interest would be impaired or impeded if the case proceeded without them; and (3) how the existing parties would not adequately protect *their* interest. The Verners have not presented this Court with any analysis connecting the

interest of the Child to their personal interest in the case.

Instead, they assert Section 452.375.5 requires the court in a child custody case to award custody to a third party when it finds the parent to be unfit, unsuitable, or unable to serve in a parental role; therefore, the court erred by denying them the right to intervene in the paternity action because they raised the issue of Father's fitness to care for Child in their motion. In this case, however, the court specifically found Father was fit, suitable, and able to care for Child, rendering the Verners' argument on this basis moot.

Furthermore, to the extent the Verners could be said to have a legally protectable interest to third-party custody or third-party visitation pursuant to Section 452.375.5, intervention was not required in the paternity action to protect those interests because, under the current state of the law, they can file an independent action seeking the same relief.[5] See In re T.Q.L., 386 S.W.3d 135, 140 (Mo. banc 2012); McGaw v. McGaw, 468 S.W.3d 435, 444-45 (Mo. App. W.D. 2015); D.S.K. ex rel. J.J.K. v. D.L.T., 428 S.W.3d 655, 660 n.7 (Mo. App. W.D. 2013).

The Verners have failed to establish the essential elements for intervention in the

---

**5.** Although noting this remedy is generally available to the Verners, this Court is not suggesting such an action has any merit. Although the Verners visited with Child and provided some care to Child for a period of time early in Child's life while Child was placed in another family member's custody, there is no evidence they were ever awarded custody or court-ordered visitation with Child or were placed in the role of parent to Child. The record is clear that shortly after learning he might be the biological father of Child, Father actively pursued his parental rights and Child has been in his custody since August 2013, or approximately four out of the five years of Child's life. Although this Court does not have the complete records of the

guardianship and juvenile proceedings before it, the Verners have acknowledged the cases involved the same general issues and those cases were resolved in Father's favor which required findings that Father was fit, suitable, and able to parent Child. Combined with the findings in the underlying paternity action that Father is fit, suitable, and able to parent Child and allowing him to do so is in Child's best interest, this necessarily means that three different judges, presiding over the three different proceedings examining Father's fitness as a parent and/or the welfare and interests of Child, have repeatedly come to the same conclusion regarding Child's placement and Father's fitness and ability to parent his own child.

paternity action as a matter of right. The trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Point II is denied.

In their fourth point on appeal, the Verners assert their request for intervention as set forth in their Amended Motion to Intervene in the paternity action was a request for permissive intervention, which the trial court erred in denying. We review the trial court's judgment denying permissive intervention for an abuse of discretion. Myers v. City of Springfield, 445 S.W.3d 608, 615 (Mo. App. S.D. 2014) (review of denial of permissive intervention after entry of a final judgment); Johnson v. State, 366 S.W.3d 11, 20 (Mo. banc 2012) (review of grant of permissive intervention after entry of a final judgment). The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Johnson, 366 S.W.3d at 21.

The trial court has the discretion to grant permissive intervention in three situations: (1) when a statute confers a conditional right on a particular party to intervene; (2) when the intervenor's claim or defense has common issues of law or fact with the main action; and (3) when the state is seeking to intervene in a case raising constitutional or statutory challenges. Id. Permissive intervention may be appropriate when the intervenors demonstrate they have an interest unique to themselves. Id.

While Section 452.375 confers a conditional right to intervene, Matter of Adoption of E.N.C., 458 S.W.3d at 403, and the Verners' request for third-party custody of Child had some common issues of law or fact with the paternity action, the Verners

have failed to demonstrate they have a unique interest in the paternity action.

Similar to their second point, the Verners' claim of error with regard to permissive intervention focuses exclusively on Father's potential unfitness which, as already noted, is an issue that has been repeatedly resolved in Father's favor.

Assertion of a claim for third-party custody or visitation under the "welfare of the child" standard under Section 425.375.5 requires proof of "special or extraordinary circumstances[.]" Matter of Adoption of E.N.C., 458 S.W.3d at 400. " '[A] significant bonding familial custody relationship ·with third parties can constitute a special or extraordinary reason or circumstance rendering it in a child's best interest to award third-party custody' under [Section] 452.375.5(5)(a)'s 'welfare of the child' prong." McGaw, 468 S.W.3d at 443, quoting Flathers v. Flathers, 948 S.W.2d 463, 470 (Mo. App. W.D. 1997).

The Verners' Amended Motion to Intervene alleged only they are Child's great-aunt and great-uncle, they began steps to adopt Child, and the court "authorized visitation" with them in Indiana pursuant to agreement by the case manager, the guardian ad litem, and the Division. The Verners do not argue on appeal and it cannot be said these allegations alone amount to special or extraordinary circumstances, or a significant bonding familial custody relationship justifying their intervention in the paternity action.

Based on the foregoing, the trial court did not abuse its discretion in denying the Verners' request for permissive intervention. Point IV is denied.

## Points I and III

In their remaining points on appeal, the Verners challenge the trial

court's decision allowing Grandmother to intervene in the paternity action and its denial of their Motion for Disqualification of Judge in the paternity action. Having affirmed the trial court's denial of the Verners' Amended Motion to Intervene, they are not parties to the underlying litigation and, therefore, lack standing to appeal from the trial court's judgment granting intervention to another party or denying their Motion for Disqualification. In re Clarkson Kehrs Mill Transp. Dev. Dist., 308 S.W.3d at 756. Points I and III are denied as moot.

### Conclusion

The judgment of the trial court is affirmed.

Roy L. Richter, J., and Colleen Dolan, J., concur.