Robert Lee THOMPSON, Appellant,

v.

B & G WRECKING & SUPPLY COMPANY, Inc., Defendant,

Bituminous Casualty Corporation, Respondent.

No. 48381.

Supreme Court of Missouri,
Division No. 2.

April 10, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied May 8, 1961.

Paul C. Sprinkle, Sprinkle, Carter, Sprinkle & Larson, Leona Pouncey, Kansas City, for appellant.

Clyde J. Linde, Billy S. Sparks, Kansas City, for respondent. Langworthy, Matz & Linde, Kansas City, of counsel.

STOCKARD, Commissioner.

In this garnishment proceeding against Bituminous Casualty Corporation (hereinafter called "garnishee") in aid of execution of a judgment for $50,000 against B & G Wrecking & Supply Company (hereinafter called "defendant") and in favor of Robert Lee Thompson, appellant, the trial court entered judgment in favor of garnishee and appellant has appealed.

Defendant was engaged in wrecking a building in the 1300 block of Grand Avenue, Kansas City, Missouri, and had obtained from garnishee a standard schedule liability insurance policy wherein garnishee agreed to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of liability imposed by law for damages because of bodily injury sustained by any person caused by accident and arising out of the hazards therein defined. Five separate "hazards"

were set forth in the printed provisions of the policy entitled "Division 1. Premises—Operations," "Division 2. Elevators," "Division 3. Independent Contractors," "Division 4. Products—Completed Operations," and "Division 5. Contractual." The policy as issued purported to cover only the "hazard" described as "Division 1. Premises—Operations," which was defined as "The ownership, maintenance or use of the premises or property, and all operations during the policy period which are necessary or incidental thereto." In Item 4 of the policy entitled "Description of Hazards," following the printed words "Division 1. Premises—Operations," there is typed the words "Wrecking or Demolition of Buildings or Structures—not marine—all operations, including salesmen or clerical office employees, at site of wrecking. * * *." In that part of the policy labeled "Exclusions" it was provided that "This policy does not apply: * * * (b) under division 1 of the Definition of Hazards, * * * (2) to elevators at any building owned, rented or controlled by the insured in its entirety, or elevators operated, maintained or controlled by the insured at premises owned, leased or controlled in part by the insured; * *." In another part of the policy the term "elevator" was defined to include "any hoisting or lowering device operated between floors or landings and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery." In this definition of an elevator it was also provided that "Neither a hoist located inside the walls of a building and not operated through hatchways, nor a hoist located outside the walls of a building and either manually operated or mechanically operated and not attached to the building walls, nor a hod or material hoist used in alterations, construction or demolition operations, * * * is an 'elevator.'"

While the above policy was in effect, appellant, an employee of Ace Glass Company, entered the premises during the time

the wrecking operations were in progress to remove a pane of glass, and in an attempt to use the freight elevator, which was and had been a permanent fixture of the building, to take the glass to the ground floor he was injured when he fell through a hole in the side of the elevator. This condition of the elevator was not the result of the wrecking operations but it existed when defendant took control of the building. Appellant brought suit against defendant and two individuals in which he sought $100,000 for personal injuries. In his petition he alleged that defendant "controlled and operated an elevator" in the building being wrecked and in which appellant was injured, and that he "was caused to fall through the elevator" by reason of the negligence of defendant in failing to exercise proper care for the safety of appellant "while using said elevator." The specific negligence alleged was that there was no warning "that a portion of the elevator cage had been removed," there was inadequate lighting so that persons "using the elevator would not see that said portion of the elevator cage was removed," that no "operator for said elevator" was provided, and that defendant "negligently failed to barricade and guard said elevator cage." Garnishee refused to defend the suit on the ground that the injury occurred on an elevator, a hazard which it contends was not covered by the policy. Defendant filed a third-party petition against garnishee alleging that the policy did cover the claim for injuries of appellant. A separate trial was ordered as to that issue but apparently it was not held.

Subsequent to the order for a separate trial of the third-party petition, appellant, defendant and the United States Fidelity & Guaranty Company (who paid workmen's compensation benefits of $10,988.45) entered into a written agreement, after notifying garnishee of their intention to do so unless it agreed to defend the suit, to the following effect: (1) Appellant would dismiss his suit as to the individuals named as defendants, (2) defendant would "withdraw its

defense to the aforesaid action" if garnishee did not "agree to assume the defense" and also agree "to pay any final judgment rendered against it [defendant] within the limits of the policy of insurance," and (3) appellant, his attorneys and United States Fidelity & Guaranty Company would not issue or cause to be issued an execution against the property of defendant "except the asset consisting of the aforementioned policy of insurance and endorsements thereto" issued by garnishee. Counsel for defendant did withdraw from the case, and when it was set for trial appellant dismissed as to the individual defendants. Then, with no notice to defendant or to garnishee, appellant amended his petition by interlineation to allege that he was injured on "what had been an elevator" but was then a "hoist." In the trial appellant testified that the "hoist" was being used to lower materials, and that a portion of the back of the "hoist" had been removed and he fell down the shaft. Judgment against defendant in the amount of $50,000 was entered, and this garnishment in aid of execution subsequently issued.

Garnishee's answers to interrogatories were to the effect that it had no property belonging to defendant, and that it was not bound to pay defendant any money by reason of any contract of insurance. It further stated that it had issued a policy of insurance to defendant which "covered wrecking operations performed by defendant" but that it did not apply to elevators or to any obligation of defendant to pay damages because of bodily injuries sustained by any person caused by accident and arising out of any elevator hazard. Garnishee then stated that "the judgment * * * was entered through the fraud and collusion of the plaintiff and of the defendant in order to overreach the garnishee herein and to attempt to permit the plaintiff herein to recover under the terms and provisions of said policy and endorsement issued by Bituminous Casualty Corporation." Garnishee also asserted that by reason of the agreement with defendant, appellant was

estopped to claim any money under the policy, and that he had waived any right, claim, or cause of action, including any rights of garnishment, arising out of the judgment against defendant. Appellant filed his denial of garnishee's answers, and also asserted that the terms of the policy "specifically provides that a lift or an elevator or a hoist in a building being dismantled and wrecked is not an elevator." Garnishee filed a reply in which it adopted by reference its answers to the interrogatories, and the issues in the garnishment proceeding were, thus formed.

After trial, without a jury, the trial court entered judgment in which it stated that after being duly and fully advised in the premises it found "the issues generally in favor of the garnishee * * * and against the plaintiff." Appellant then filed a motion for new trial in which no assignment of error was directed to the ruling by the trial court on the issues presented by garnishee as to fraud, collusion, waiver and estoppel. In his brief on this appeal appellant presents four contentions of error in his points, but none pertain to the above mentioned issues. However, garnishee in its brief again asserts that "The collusive agreement between plaintiff and defendant * * * acted as a waiver and release of any claim plaintiff might have against garnishee and plaintiff is estopped to claim garnishee is liable upon the policy." Garnishee also asserts that the trial court's finding on this defense is final and appellant has abandoned any alleged error with respect to the trial court's finding. Appellant has filed no reply brief.

■ Neither party on this appeal has briefed the question of the right of the parties, particularly the garnishee, to retry in the garnishment proceeding the issue of whether appellant was injured on an elevator as distinguished from a hoist. As a general rule the garnishee cannot dispute the merits of plaintiff's claim against the defendant, Row v. Cape Girardeau Foundry Co., Mo.App., 141 S.W.2d 113, and cannot go outside the record to make a

collateral attack on the judgment. The issues of the suit in which the judgment was obtained are not subject to being retried in a garnishment proceeding in aid of execution of that judgment. As pertinently stated in 38 C.J.S. Garnishment § 2, p. 207 "Garnishment has nothing to do with the merits of the main suit." However, the parties did retry the issue in the garnishment proceeding as to whether the instrumentality upon which plaintiff was injured was in fact an elevator. On this appeal that is the principal issue briefed, and appellant does not assert in his points or argument that garnishee was not entitled to show that he was in fact injured on an elevator. As will subsequently be noted, the term "elevator" as used in the policy is defined to include "any hoisting * * * device," with certain exceptions, so proof that appellant was injured on a hoist would not necessarily mean that the injury was covered by the policy of insurance. We shall review the entire record and rule the case on the theory it was tried and presented on this appeal.

■ Appellant asserts in four separate points that the trial court erred in finding the issues in favor of garnishee because (1) the policy "specifically covered the plaintiff's judgment and * * * did not in any way eliminate insurance coverage but covered all wrecking operations," (2) "even if there was a conflict in the provisions of the policy of insurance it is the law that there shall be a strict construction of the policy in favor of the named insured," (3) the facts and the provisions of the policy show a "clear intention to cover all of the demolition operations without limitation," and (4) the injury did not occur by reason of the operation of the elevator.

"In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel.

Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity when none exists * * *.'" Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101, 57 A.L.R. 615. See also Central Surety & Insurance Corporation v. New Amsterdam Casualty Co., 359 Mo. 430, 222 S.W.2d 76, 78.

The policy in this case provided that "The insurance afforded is only with respect to such and so many of the coverages and divisions thereunder as are indicated by specific premium charge or charges." Coverage A, "Bodily Injury Liability," is then divided into five "Hazards." The first is "Premises-Operations" and the second is "Elevators." Opposite the first under the heading "Advance Premiums" is the figure $69.84. Opposite the remaining four, including the second entitled "Elevators," are the typed words "Not Covered." On the face of the policy there appears the heading "Description of Hazards." Under "Division 1. Premises-Operations" appears the description previously set out which included "Wrecking or Demolition of Buildings or Structures— not marine—all operations, * * *." Under "Division 2. Elevators" and the other three divisions again appear the typed words "Not covered." Plaintiff argues that the description of the hazard "Division 1. Premises-Operations" to include "all operations" means that the policy covered accidents occurring on elevators, or at least by this provision the policy became ambiguous. However, this argument overlooks or ignores the express provision in the policy that "This policy does not apply * * * (b) under division 1 of the Definition of Hazards, * * * (2) to elevators at any building owned, rented or controlled by the insured in its entirety, or elevators operated, maintained or controlled by the insured at premises owned, leased or controlled in part by the insured." The provisions of a policy are to be read together, and there is no ambiguity in this exclusion clause in the policy. Compare the factual situation and the ruling of this court in Central Surety & Insurance Corporation v. New Amsterdam Casualty Co., supra.

In Refined Syrups & Sugars, Inc. v. Travelers Insurance Company, D.C., 136 F.Supp. 907, 910, affirmed 2 Cir., 229 F.2d 439, an insurance policy with substantially the same wording and with the same arrangement of the description of hazards was construed. There an employee of a contractor was injured when struck by the counterbalance of an elevator. The policy extended to the "Premises-Operations" hazard and to the "Independent Contractors" hazard, but not to the "Elevator" hazard. That court held that "by the terms of the policy, insurance was afforded with respect to the hazards arising from 'Premises-Operations' and 'Independent Contractors' and was not afforded with respect to the other hazards enumerated above. Clearly, elevator coverage was excluded." It was further held that "The insurance contract was drawn so as to put a prospective purchaser of insurance on notice that if he wanted elevator protection, he had to pay an additional premium." While the precise language used in the definition of the "Premises-Operations" hazard is not set out, it was said: "Furthermore, the broad language of the 'Premises-Operations' hazard was expressly limited by one of the exclusions so that it did not apply to elevators."

In this case the policy was clearly worded, and it was arranged to place a purchaser of the insurance on notice that the hazard from "elevators" as therein defined was a separate category for insurance coverage, and that the policy was not to include or provide coverage for that hazard unless the additional premium was paid. There is no contention here that such premium was paid. The policy contained the express provision that the definition set out in the policy of

the hazard "Premises-Operations" was not to apply to elevators operated, maintained or controlled by the insured at premises owned, leased or controlled by the insured. We do not find the provisions of the policy to be ambiguous. In fact, we find it difficult to see how it could have been made more plain that if the insured did not pay for coverage of the elevator hazard the policy did not extend thereto, unless it be said, which we are not willing to do, that all exclusions must be stated in a policy at the same place as the coverage provision to which it applies and limits.

Plaintiff argues that the exclusion provision pertaining to elevators "is very apparent for the purpose of avoiding carrier liability upon the elevators." Plaintiff cites no case holding that such an exclusion provision in a policy is limited to that. It would be just as reasonable, in fact more reasonable, to assume that insurance coverage for the elevator hazard was not wanted and was not purchased because an elevator in a building being wrecked or demolished would not be in use, at least by the public.

■ Appellant asserts· that since the building was being torn down and was not open to the public, and because the elevator was being used to take salvaged material to the ground level, it was a hoist within the meaning of the policy. He cites Deiner v. Sutermeister, 266 Mo. 505, 178 S.W. 757, 759, where a hoist was distinguished from a scaffold, and where a dictionary definition of a hoist was set out as "an 'apparatus for lifting goods.' " This definition is correct as far as it goes, but that does not mean that every device for lifting or lowering goods is a hoist. However, we need not go outside the policy to determine that the freight elevator in this case was excluded from the coverage of the policy. Under the caption "Elevator Defined" it is provided in the policy that "The word 'elevator' wherever used in this policy shall mean *any hoisting or lowering device* operated between floors or landings· * *." (Italics added.) The policy then excludes from the definition of elevators certain

hoisting devices. The first is "a hoist located inside the walls of a building and not operated through hatchways;" the second is "a hoist located outside the walls of a building * * * and not attached to the building walls;" and the third is "a hod or a material hoist used in alterations, construction or demolition operations." These clearly referred to what is generally understood to be hoists which are of temporary construction to be used for specific purposes and which do not constitute permanent fixtures of the building. This distinction is clearly recognized by the Kansas City, Missouri, building code. The freight elevator here was of permanent construction and had been used as a freight elevator when the building was in use. It did not change into a material hoist because the building was being demolished but it remained an elevator. To hold otherwise would place a strained construction on the words as they are generally used and understood and which is not warranted under any applicable rule of construction. As previously noted, the rules of construction of insurance policies do not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity."

We conclude that appellant was injured on an elevator, and that the policy of insurance clearly excluded from its coverage the "hazard" of such injuries. The trial court reached the correct result.

This conclusion makes it unnecessary to rule on the legal effect of the amendment of the petition without notice which resulted in a material change, at least on whether the insurance policy covered the accident, after appellant had entered into an agreement with the defendant whereby defendant would withdraw its defense to the suit when the petition alleged an injury occurring on an elevator. As previously noted, as a defense to the garnishment proceeding garnishee pleaded fraud, collusion, waiver and estoppel based on these occurrences; the trial court found for the garnishee on "all issues;" and appellant

urged no error in this respect in his motion for new trial or on this appeal.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.