**E. Michael WAYLAND, Appellant,**

v.

**NATIONSBANK, N.A., Respondent.**

**No. ED 77836.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 24, 2001.

Application for Transfer Denied
June 26, 2001.

Charles S. Kramer, St. Louis, MO, for Appellant.

Daniel E. Claggett, St. Louis, MO, for Respondent.

DRAPER, Judge.

On October 6, 1994, the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division, rendered a money judgment[1] in favor of W–V Enterprises, Inc.,[2] and E. Michael Wayland (hereinafter, "Wayland") in the amount of $271,054.16 against George M. Croft (hereinafter, "Croft"). Wayland, as the sole stockholder, assumed all of the assets and liabilities of W–V Enterprises, Inc..

In April, Boatmen's National Bank of St. Louis[3] (hereinafter, "Boatmen's") received a garnishment summons to appear before the Bankruptcy Court on May 4, 1995, to "answer such allegations and interrogatories as may be exhibited" by Wayland. Boatmen's also was served interrogatories to ascertain Boatmen's holdings of Croft's which may be used to satisfy the judgment.

Boatmen's Assistant Vice–President, Eugene F. Niehoff (hereinafter, "Niehoff") responded to the interrogatories once but failed to sign the document under oath. On May 25, 1995, counsel for Wayland sent a letter requesting Niehoff to respond to the interrogatories for a second time, but this time to sign the document under oath. At this time, counsel for Wayland had information that Boatmen's held money in at least one account in the name of Croft. Niehoff responded to the interrogatories for a second time, under oath on July 13, 1995. Niehoff responded negatively, both times, to all interrogatory questions[4] regarding Boatmen's holdings of Croft's assets. Wayland filed neither an exception nor a denial to the interrogatories.

Inconsistent with Niehoff's interrogatory responses, Boatmen's, in fact, maintained accounts, in whole or in part, of Croft's on April 5, 1995. Account Number 06611–0061–451287 contained $90,335.00 and account number 49–0100–025445 contained $1,043.77.

On August 20, 1996, Niehoff was deposed in the bankruptcy proceeding and testified that he knew of a search in the bank's records for Croft individually or jointly with another person, that the ac-

---

**1.** *In the matter of W–V Enterprises, Inc. and E. Michael Wayland, assignees of North Kansas Association v. George M. Croft,* No. 88–4127 (E.D.Mo. October 6, 1994).

**2.** W–V Enterprises, Inc. is a dissolved Kansas corporation.

**3.** Respondent NationsBank, N.A. is the successor in interest to the Boatmen's National Bank of St. Louis. NationsBank, N.A. now is known as Bank of America, N.A.

**4.** Wayland presented four interrogatory questions including:

1. At the time of service of the garnishment, had you, or have you since that time had, or have you now in your possession, custody, or charge, any goods, chattels, monies, credits or effects, including, but not limited to, deposit accounts, savings or checking accounts belonging to the Defendant, George M. Croft, individually or joint- ly with any other person or entity, including but not limited to George M. Croft d/b/a Downtown Chiropractic? If so, state what they are or were, their value, identify each joint or co-owner, and attach copies of any documents reflecting the identity and/or ownership of any such goods, chattels, monies, credits or effects to your answer.

2. At the time of service of the garnishment, were you, or have you since become, or are you now in any way, indebted to the Defendant, George M. Croft or George M. Croft d/b/a Downtown Chiropractic? If your answer is "yes" state to what extent and in what manner the debt accrued, and if evidenced by any instrument in writing, describe the same and state what has become of the same and under whose control and under whose custody it is held, and attached a copy of this instrument to your answer.

counts existed at the time he answered the interrogatories and despite this actual knowledge, he responded negatively to the interrogatories and could not explain why he did so.

Wayland filed this action in the Circuit Court of the City of Saint Louis charging NationsBank, as the successor to Boatmen's, with fraud and negligent misrepresentation in December 1998. NationsBank filed its Motion for Summary Judgment on September 27, 1999, claiming Wayland failed to file exceptions or denials to the Answers in the Garnishment proceeding as provided by Rule 90.13.[5] On March 5, 2000, the trial court granted NationBank's summary judgment motion. Wayland appeals.

■ Wayland alleges that the trial court erred in granting summary judgment because Wayland was not precluded from relying upon Niehoff's sworn answers and thereby obviating the need to file a denial in response thereto.[6] Wayland claims summary judgment was granted improperly in that he was not required to file a denial in response to NationBank's interrogatory answers in federal court as a precursor for this fraud and negligent misrepresentation action in state court.

In review of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is intended to move the parties beyond the petition's allegations and determine if a material fact for trial exists. *Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993). Appellate review of the grant of summary judgment is purely a

question of law and, hence, employs the same criteria as imposed by the trial court in its initial determination of the propriety of the motion. *ITT Commercial Finance*, 854 S.W.2d at 376.

In the trial court's judgment, it found that despite Wayland questioning the veracity of the answer in May 1995 in a letter to counsel, Wayland presented no evidence of filing a denial or exceptions to Niehoff's answers to the garnishment interrogatories. Wayland's claims of fraud and negligent misrepresentation arise in the conduct from the garnishment proceeding in federal court.

Wayland fails to cite, and this Court's exhaustive research was unable to locate, any authority allowing Wayland to seek redress in our state court rather than in the federal court where the underlying action was resolved. This Court searched and was unable to locate any authority to recognize the fraud and negligent misrepresentation cause of action in the state court based upon an allegation of perjury committed during a federal court case. However, the Court acknowledges that there were a myriad of options available to Wayland contemporaneously within the federal system. *See* Fed.R.Civ.P. 37 (sanctions); Fed.R.Civ.P. 26 (duty of disclosure); Fed.R.Bankr.P. 8001 (taking appeals); 28 U.S.C. Section 158 (appeals); 18 U.S.C. Section 152 (false oaths and claims); Fed.R .Bank.P. 3008 (reconsideration of claims); Fed.R.Bank.P. 9024 (relief from judgment or order). Without further authority, there is no reason to assume that Wayland has the ability to step outside of the federal system and seek redress within the state system when Wayland had ade-

---

5. This rule is now Rule 90.07(c).

6. We remind attorneys when drafting their points relied on to review the dictates of

*Thummel v. King,,* 570 S.W.2d 679, 685 (Mo. banc 1978) and Rule 84.04(d).

quate opportunities to remedy any injustice in the federal system.[7]

[Under] Missouri rules, garnishment actions are governed by Rule 90 and Chapter 525 RSMo (1994). Issues in this proceeding are established by Wayland's denial of the interrogatory answers and the bank's reply or response thereto. *Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949, 952 (Mo.App. E.D. 1984). When a garnishee answers interrogatories denying that the garnishee holds property of the debtor, the plaintiff must file a denial. *Id.* at 953. The issues are determined by the denial and reply, not by the interrogatories and the answer. *Id.* "If the answer of the garnishee be not excepted to nor denied in proper time, it shall be taken to be true and sufficient." Section 525.210 RSMo (1994).

Wayland had an adequate opportunity to present his position during the federal trial. He knew of the perjured statements by Niehoff, but failed to act upon that information. He was not prevented from fully trying and exhibiting his case through the misinformation sworn to under oath by the other party. By failing to file a denial to the interrogatories or to question the veracity of the interrogatory responses, Wayland is precluded from bringing this action. *See Blackstock v. Kohn,* 994 S.W.2d 947, 953 (Mo. banc 1999)(when allegedly perjurious statements concerning a tax return were known and parties failed to question the truthfulness of those statements, there cannot be a claim of reliance upon the misrepresentations).

The judgment of the trial court is affirmed.

GARY M. GAERTNER, Sr., P.J. and LAWRENCE G. CRAHAN, J., concur.

---

7. By way of analogy, if an employee accidentally is killed in the course of his or her employment, the survivors do not have a cause of action which sounds in accidental death against the employer. Even when the facts and circumstances of the accident make a prima facie case for a tort claim, "[w]orker's compensation provides the only means of recovery against an employer for an employee's injury which occurs on the job due to the employer's failure to provide a safe workplace." *State ex rel. Feldman v. Lasky,* 879 S.W.2d 783, 785 (Mo.App. E.D.1994).