

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

FRANKLIN ALLEN,                             )
                                            )
                    Respondent/Garnishor,   )
                                            )
v.                                          )
                                            )   WD77905
                                            )
WAYNE BRYERS,                               )
                                            )   OPINION FILED:
                    Defendant,              )   September 15, 2015
                                            )
                                            )
ATAIN SPECIALTY INSURANCE                   )
COMPANY,                                    )
                                            )
                    Appellant/Garnishee.    )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable John M. Torrence, Judge**

**Before Division II:** Thomas H. Newton, Presiding Judge, and
Victor C. Howard and Mark D. Pfeiffer, Judges

Atain Specialty Insurance Company ("Insurer") appeals from the summary judgment entered by the Circuit Court of Jackson County, Missouri ("trial court"), in a garnishment in aid of execution proceeding. We affirm in part, reverse in part, and dismiss in part.

## Factual and Procedural Background

Insurer issued a commercial general liability policy to John Frank, d/b/a The Sheridan Apartments, policy number CIP117483, with a policy period from October 4, 2011, to October 4, 2012 ("the insurance policy"). The declarations page of the insurance policy reflected policy limits of $1 million for liability claims against an insured for personal injury. In pertinent part, the insurance policy stated:

> SECTION I—COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

An "insured" under the policy included "employees"—"but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." The insurance applied only to an "occurrence," which is defined as "an accident." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person." The policy also stated:

> 2. Exclusions
> This insurance does not apply to:
> a. Expected Or Intended Injury
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

The policy also contained an Assault and Battery Exclusion:

> This insurance does not apply under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY arising from:

2

1.    Assault and Battery committed by any Insured, any employee of any Insured or any other person[.]

On June 10, 2012, Franklin Allen ("Allen") was on the premises of The Sheridan Apartments when he was severely injured by the discharge of a weapon carried by Wayne Bryers ("Bryers"), the property and security manager for the apartment complex, as Bryers was removing Allen from the apartment property.

On August 27, 2012, Allen's attorney sent a letter to John Frank, d/b/a The Sheridan Apartments, advising Mr. Frank that Allen would assert a claim of negligence against Mr. Frank's employee, Bryers. Shortly thereafter, Allen's attorney sent a similar letter to Insurer, informing Insurer that "Allen was rendered a paraplegic as a result of a gunshot wound to his spinal cord." On September 12, 2012, Insurer sent Bryers a reservation of rights letter, acknowledging receipt of Allen's letter and confirming that Insurer had issued a commercial general liability insurance policy to John Frank, d/b/a The Sheridan Apartments. Insurer stated that it would continue to investigate the claim and would:

> provide a defense on [Bryers's] behalf under a full and complete reservation of all our rights and defenses if suit is filed. . . . We further reserve the right to deny coverage and withdraw from any further participation in this matter altogether, should the facts be developed that determine the . . . policy does not provide coverage for this loss. . . . By naming the specific grounds for this reservation of rights, we do not waive any of our rights or any of the other provisions or conditions of the insurance policy, and specifically reserve all our rights and remedies under the policy and under the statutes in common law. . . . Atain denies any and all coverage under the policy in connection with the claim described above and furthermore denies that it has any legal obligation to indemnify you [Bryers] in the event a lawsuit is filed and a judgment is entered against you.

On December 4, 2012, Allen filed a petition for damages in the Circuit Court of Jackson County, Missouri, alleging a negligence action arising out of the unintentional and accidental discharge of a weapon by Bryers while he was physically removing Allen from the premises of

3

The Sheridan Apartments ("Underlying Lawsuit"). Thereafter, Insurer's attorney sent Bryers's counsel a letter dated December 14, 2012, supplementing Insurer's September 12 reservation of rights letter, stating that, based upon subsequent investigation, the alleged liability of Bryers for the bodily injury of Allen appeared to Insurer to be excluded under the terms of the insurance policy, expressly relying upon the Assault and Battery Exclusion and the Expected or Intended Injury Exclusion.

Bryers refused to accept Insurer's reservation of rights defense,[1] and at no time did Insurer withdraw its reservation of rights, instead electing to file a declaratory judgment action.[2] Thus, the attorney hired by Insurer to represent Bryers in the Underlying Lawsuit was withdrawn from the case, and Bryers proceeded with a section 537.065 agreement with Allen.[3]

---

[1] "Insurers cannot force insureds to accept a reservation of rights defense." *Ballmer v. Ballmer*, 923 S.W.2d 365, 369 (Mo. App. W.D. 1996). When an insured exercises his right to reject the defense, an insurer has three options: (1) represent the insured without a reservation of rights defense; (2) withdraw from representing the insured; or (3) file a declaratory judgment action to determine the scope of the policy's coverage along with a request that the underlying tort suit be stayed until the declaratory judgment action is decided. *Id.* at 369-70. If the insured rejects the conditional defense and the insurer stands by its position of no coverage, the insurer forfeits its right to participate in the litigation and loses control of the lawsuit. *Id.* at 369. On appeal, one of Insurer's arguments is that it offered to defend Bryers and Bryers wrongfully refused the defense. Clearly, here, the offer of defense was with a reservation of rights as to coverage, and undisputedly, Bryers rejected that defense, as was his right. Thus, the trial court properly rejected this argument by Insurer.

[2] "The law treats [the decision of an insurer to seek a declaration of non-coverage in a declaratory judgment proceeding] as a refusal to defend." *Id.* at 370. The record of this appeal does not reflect that Insurer ever obtained a final declaration of law as to coverage issues under its policy in a declaratory judgment proceeding. Rather, the record before us reflects that Insurer pursued its arguments relating to coverage and indemnity under the insurance policy as affirmative defenses to the garnishment exceptions filed by Allen in the underlying case.

[3] Section 537.065 provides that a claimant and a tortfeasor may contract to limit recovery to specified assets or insurance contract:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. . . .

Though Insurer couches some of its arguments on appeal by attacking the terms of the section 537.065 agreement between Allen and Bryers, Insurer has not provided the agreement in the record on appeal—though it is the appellant's responsibility to file any "exhibits that are necessary for the determination of any point relied on,"

On April 5, 2013, Insurer moved to intervene as of right in the Underlying Lawsuit pursuant to Rule 52.12(a)(2). The trial court denied Insurer's motion on April 17, 2013. Insurer did not appeal the denial of its motion to intervene at any time prior to entry of judgment in the Underlying Lawsuit.[4]

A bench trial was conducted on April 18, 2013, and the trial court entered judgment on April 22, 2013, as amended on April 30, 2013 ("Underlying Judgment"). Based upon the evidence adduced at trial, the trial court expressly found, in pertinent part, that:

- at the time of Bryers's discharge of the handgun on June 10, 2012, Bryers was acting in the course of his employment with John Frank, d/b/a The Sheridan Apartments;

- Bryers's discharge of the handgun acquired at the direction of his employer (i.e., The Sheridan Apartments) was unintentional, accidental, and/or negligent;

- Bryers's actions that resulted in the discharge of the handgun that injured Allen did not involve an assault, a battery, or any intentional act, and his conduct was not excessive or unreasonable;

_____

Rule 81.12(e), and "[a]ny exhibits not timely deposited may be considered by the court as immaterial to the issues on appeal," Rule 81.16(c).

[4] This is significant to the subsequent discussion in today's ruling relating to Insurer's belated attempt to file a successive motion to intervene *after* the judgment in the underlying tort case had become final and the trial court had been divested of jurisdiction to consider such a successive motion to intervene. As we have previously stated:

> When a movant claims intervention as a matter of right, the movant asserts that [it] may be legally bound or prejudiced by any judgment entered in the case. Because the movant cannot appeal from the judgment unless [it] is allowed to intervene, the order denying intervention has the degree of definitiveness which supports an appeal therefrom. Thus, the denial of a motion to intervene as a matter of right under Rule 52.12(a) is a final and appealable judgment.

*State ex rel. Ideker, Inc. v. Grate*, 437 S.W.3d 279, 283 (Mo. App. W.D. 2014) (internal quotation omitted) (citation omitted).

5

- as a result of the accidental discharge of Bryers's weapon, Allen suffered a permanent and disabling spinal injury resulting in damages in the sum of $16 million.[5]

On June 10, 2013, after the Underlying Judgment had become final, Allen filed an application for garnishment in aid of execution on the Underlying Judgment against Insurer as garnishee (hereinafter referred to as "Insurer/Garnishee"), and propounded interrogatories to Insurer/Garnishee. On August 2, 2013, Insurer/Garnishee filed its answers to the garnishment interrogatories, denying that the insurance policy provided indemnity to the judgment debtor (i.e., Bryers) arising from the Underlying Judgment.

In response, garnishor Allen filed exceptions to Insurer/Garnishee's garnishment interrogatory answers. Allen alleged that Insurer/Garnishee:

- wrongfully refused to defend Bryers;

- acted in bad faith when it refused to settle Allen's claim against Bryers;

- acted in bad faith when it refused to defend Bryers;

- is bound to the section 537.065 agreement and to the trial court's judgment awarding damages to Allen; and

- is precluded from asserting its policy defenses.[6]

Insurer/Garnishee filed its response to Allen's exceptions on August 29, 2013, raising affirmative defenses that it has likewise raised in the present appeal.

---

[5] *See Assurance Co. of Am. v. Secura Ins. Co.*, 384 S.W.3d 224, 233 (Mo. App. E.D. 2012) ("Where the insurer had the opportunity to defend the insured but wrongfully refused to do so, the insurer is precluded from relitigating any facts that actually were determined in the underlying case and were necessary to the judgment." (internal quotation omitted)). Here, the facts enumerated in the Underlying Judgment were relevant to the trial court's analysis of the "duty" owed to Allen by Bryers and the corresponding breach of that duty. Thus, the trial court's factual findings are binding upon Insurer/Garnishee in the subsequent indemnity proceeding that was initiated by Allen in the present garnishment in aid of execution proceeding.

[6] Insurer/Garnishee's appeal addresses both procedural and substantive infirmities in the trial court's summary judgment ruling. Because we have granted relief in today's ruling to Insurer/Garnishee as to its procedural argument attacking the trial court's judgment awarding damages in excess of the insurance policy's liability policy limits, we need not and do not address Insurer/Garnishee's alternative substantive arguments relating to the topic of damages assessed against Insurer/Garnishee in excess of the policy limits.

On February 21, 2014, Allen moved for summary judgment as to his garnishment petition. Insurer/Garnishee argued in response to the motion for summary judgment that Insurer/Garnishee did not have a full and fair opportunity to litigate the liability facts in the Underlying Lawsuit and, therefore, could not be bound by the judicial determinations in the Underlying Judgment.

On April 25, 2014, almost one year after the Underlying Judgment had become final, Insurer/Garnishee again moved to intervene in the Underlying Lawsuit and also moved the trial court to set aside the Underlying Judgment, alleging fraud. On July 25, 2014, the trial court denied Insurer/Garnishee's motions to intervene in the Underlying Lawsuit and to set aside the Underlying Judgment. On the same date, the trial court granted summary judgment to Allen. Insurer/Garnishee moved the trial court to reconsider its summary judgment ruling, which the trial court denied.

Insurer appealed.

**Motions to Intervene in the Underlying Lawsuit and Set Aside the Underlying Judgment**

We first address Insurer/Garnishee's claims on appeal relating to its motions to intervene in the Underlying Lawsuit and to set aside the Underlying Judgment—motions that were filed on April 25, 2014, almost one year after the trial court's Underlying Judgment was entered on April 30, 2013.

We have recently addressed this topic of untimely and unauthorized motions after final judgment leading to rulings therefrom that are void:

> Rule 75.01 limits the circuit court's control over a judgment to 30 days after a judgment is entered. That rule provides: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." Further,

7

Rule 81.05(a)(1) provides that "[a] judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed." . . .

. . . .

The circuit court, therefore, was clearly without jurisdiction to issue any ruling upon [movant's] motion to intervene because the thirty days within which the circuit court retained control over its judgment had expired. "After the expiration of the 30 days provided by Rule 75.01, the trial court is divested of jurisdiction, unless *a party* timely files an authorized after-trial motion." [*Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 468-69 (Mo. banc 2011)] (emphasis added). "Following divestiture [of the circuit court's jurisdiction], any attempt by the trial court to continue to exhibit authority over the case . . . is void." *Id.* at 469. "Since the judgment was final and the [circuit court] no longer had jurisdiction, the [circuit court] no longer had the power to grant the . . . motion to intervene." *State ex rel. Abdulla v. Roldan*, 207 S.W.3d 642, 647 n. 6 (Mo. App. 2006); *see also Pius v. Boyd*, 857 S.W.2d 238, 242 (Mo. App. 1993) ("[O]nce judgment is final, the trial court loses jurisdiction and an application for intervention is precluded because no pending action exists into which the applicant could intervene").

*Williston v. Mo. Dep't of Health & Senior Servs.*, 461 S.W.3d 867, 869-70 (Mo. App. W.D. 2015).

Here, the Underlying Judgment was entered on April 30, 2013, and Insurer/Garnishee's motion to intervene was not filed until April 25, 2014, well after the trial court had been divested of jurisdiction to consider Insurer/Garnishee's motion to intervene. Therefore, Insurer/Garnishee's motion to intervene was an unauthorized post-judgment motion, and the trial court's ruling thereon is void.

The same is true of Insurer/Garnishee's motion to set aside the Underlying Judgment. Insurer/Garnishee was not a party to the Underlying Lawsuit and its motion to set aside is thus an unauthorized post-judgment motion,[7] and the trial court's ruling thereon is void.

---

[7] *See Eckhoff v. Eckhoff*, 242 S.W.3d 466, 468-69 (Mo. App. W.D. 2008) ("Where a movant's motion to intervene is denied, the movant lacks standing to appeal from any subsequent order or judgment in the proceeding."); *see also Lawrence F. Behymer, Sr. Marital Trust Dated June 7, 1994 v. City of Ballwin (In re Clarkson Kehrs Mill Transp. Dev. Dist.)*, 308 S.W.3d 748, 756 (Mo. App. E.D. 2010) (citing *Gene Kauffman*

Insurer/Garnishee "cannot appeal from the circuit court's void order." *Id.* at 870. We, therefore, dismiss that portion of Insurer/Garnishee's appeal asserting trial court error related to its motions to intervene and set aside.

**Garnishment in Aid of Execution versus Equitable Garnishment Proceedings**

We begin the remaining analysis of our ruling with a discussion regarding the distinction between a garnishment in aid of execution of an *existing* judgment compared to an equitable garnishment proceeding in which the plaintiff, in a separate lawsuit, is attempting to assert an independent claim or claims directly against an insurer, as a party defendant to the proceeding, and in which a *new* judgment (against the insurer) is sought in such a proceeding.

"There are two avenues for a judgment creditor to collect money from an insurance company: (1) a traditional garnishment under section 525.240 and Rule 90[;] or (2) a direct action against the insurer authorized by section 379.200." *Johnston v. Sweany*, 68 S.W.3d 398, 403 (Mo. banc 2002).[8]

Traditional garnishment is a statutory creation in derogation of the common law. *Moore Auto. Grp., Inc. v. Goffstein*, 301 S.W.3d 49, 53 (Mo. banc 2009). "'Garnishment is a proceeding *in rem* that brings within the jurisdiction and power of the court a debt or chose in action and impresses it with the lien of the judgment in aid of execution.'" *McGathey v. Matthew K. Davis Trust*, 457 S.W.3d 867, 873 (Mo. App. W.D. 2015) (quoting *Div. of Emp't Sec. v. Cusumano*, 785 S.W.2d 310, 312 (Mo. App. E.D. 1990)). A garnishment proceeding

---

*Scholarship Found., Inc. v. Payne*, 183 S.W.3d 620, 627-28 (Mo. App. W.D. 2006) (finding a movant has no standing to appeal where the movant has never obtained a right of intervention in the proceedings appealed from)).

[8] All statutory references are to the Revised Statutes of Missouri 2000, as updated. All rule references are to I MISSOURI COURT RULES – STATE (2015). Rules 41 to 101, inclusive, are promulgated pursuant to the authority granted the Missouri Supreme Court by section 5 of article V of the Missouri Constitution and supersede all inconsistent statutes. Rule 41.02. Chapter 525 has remained materially unchanged since 1939; and prior to 1981, Rule 90 largely tracked Chapter 525. *McGathey v. Matthew K. Davis Trust*, 457 S.W.3d 867, 874 n.8 (Mo. App. W.D. 2015). Amendments to Rule 90 in 1981, 1988, and 1999 "have increasingly strayed from the template of Chapter 525." *Id.*

governed generally by Chapter 525 and Rule 90 is an ancillary or auxiliary proceeding growing out of, and dependent on, an underlying original or primary action or proceeding. *Goffstein*, 301 S.W.3d at 53. "Garnishment in aid of execution is an incidental remedy by which a judgment creditor may collect [upon an existing] judgment by reaching the judgment debtor's property in the hands of a third party." *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 112 (Mo. App. W.D. 2012) (internal quotation omitted). In a Rule 90 garnishment, which reflects the Chapter 525 procedure, the garnishment action is styled with the same case style and has the same case number as the original suit; the insurer is not indicated as a party but as a garnishee. *Johnston*, 68 S.W.3d at 404.

The procedure for garnishment in aid of execution is set forth in Rule 90.07. Interrogatories are served on the garnishee simultaneously with the summons and writ of garnishment. Rule 90.07(a)(3). The garnishee is required to file and serve verified answers to the interrogatories. Rule 90.07(b). The garnishor then files any exceptions to the interrogatory answers, asserting any objections to the answers and all grounds upon which recovery is sought against the garnishee. Rule 90.07(c). The garnishee may file a response to exceptions. Rule 90.07(d).

> In garnishment actions governed by Rule 90 and Chapter 525:
>
> the summoning of the garnishee, and the propounding of the interrogatories to [it] and [its] answer thereto, are merely the preliminaries to the making up of the issues between plaintiff and the garnishee. When the latter answers saying [it] has no money or property of the defendant, the denial [or exceptions] of the plaintiff is the foundational pleading on which his cause of action against the garnishee rests. The issues are made up, not by the interrogatories and answer, but by the denial [or exceptions] and reply [or response].

*Landmark Bank of Ladue v. Gen. Grocer Co.*, 680 S.W.2d 949, 953 (Mo. App. E.D. 1984) (quoting *Rees v. Peck-King Mtg. Co.*, 230 S.W. 666, 667 (Mo. App. 1921)). *See also Wayland v.*

10

*Nationsbank, N.A.*, 46 S.W.3d 21, 24 (Mo. App. E.D. 2001). The exceptions to interrogatory answers stand in place of a petition and must contain the grounds upon which recovery is sought. *Landmark Bank of Ladue*, 680 S.W.2d at 953.

By contrast, although called an equitable garnishment, this direct cause of action against an insurance company "is no garnishment at all." *Zink v. Emp'rs Mut. Liability Ins. Co.*, 724 S.W.2d 561, 564 (Mo. App. W.D. 1987) (overruled on other grounds by *Johnston*, 68 S.W.3d 403). "An equitable garnishment action is a suit in equity against the insurance company to seek satisfaction of one's judgment under an insurance policy." *McDonald v. Ins. Co. of State of Pa.*, 460 S.W.3d 58, 67 (Mo. App. W.D. 2015) (internal quotation omitted). "[Section] 379.200 did not create an exclusive, specific statutory remedy," *Cronin v. State Farm Fire & Cas. Co.*, 958 S.W.2d 583, 587 (Mo. App. W.D. 1997), and may be used in conjunction with a Rule 90 garnishment. *Johnston*, 68 S.W.3d at 403-04.

"In an equitable garnishment action brought directly against an insurer, the plaintiff must prove that a judgment was obtained against an insurance company's insured during the policy period and that the injury is covered by the policy." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015) (citing § 379.200). The insurer may assert any defense against the judgment creditor which it might have asserted as a defense in an action brought against it by its insured, including the defense of "no coverage" by proving that the accident fell under a policy exclusion and was therefore outside the insurance contract's coverage. *Adams v. Manchester Ins. & Indem. Co.*, 385 S.W.2d 359, 363 (Mo. App. 1964).

Thus, whereas an equitable garnishment action asserts a separate and distinct claim or claims against an insurer and seeks a judgment directly against the insurer, a traditional

garnishment is only designed to collect upon rights that have been adjudicated in an existing judgment. As this case reflects, this is a distinction with a difference.

Here, Allen did not proceed by an equitable garnishment action as provided in section 379.200, but by the traditional garnishment proceeding provided by Rule 90 and Chapter 525.[9]

## Jurisdiction

The trial court's summary judgment was entered as a part of a proceeding in aid of enforcement or collection of the underlying final judgment in favor of Allen and against Bryers. Therefore, the summary judgment order was a special order, which is defined as "orders in special proceedings attacking or aiding the enforcement of [a] judgment after it has become final in the action in which it was rendered." *Cain*, 383 S.W.3d at 111 (internal quotation omitted). Special orders after final judgment are appealable pursuant to section 512.020(5).

## Standard of Review

"The interpretation of an insurance policy is an issue of law, subject to *de novo* review." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. banc 2014). "[I]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . ." *Id.* at 553-54 (internal quotation omitted). "The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning." *Id.* at 554.

However, with regard to factual determinations that have been made by the trial court as to liability and damages in the Underlying Judgment, "[w]here one is bound to protect another

---

[9] Another avenue to resolve a dispute concerning the existence of insurance coverage is through a declaratory judgment action. *Barron v. Shelter Mut. Ins. Co.*, 220 S.W.3d 746, 747 (Mo. banc 2007) ("A declaratory judgment action seeking the interpretation of an insurance policy, and the determination of liabilities arising under it, is properly brought under the declaratory judgment act.").

12

from liability, he is bound *by the result of the litigation* to which such other is a party, provided he had opportunity to control and manage it." *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 709 (Mo. banc 2011) (internal quotation omitted). Where the issues of liability and damages are determined in a trial on the merits, an insurer is not entitled to a second "bite[ ] of the apple" on either of these issues in an indemnity proceeding. *Id.*[10] "Where the trial court has entered judgment after a hearing on liability and damages, . . . the insurer is not entitled to a second hearing . . . in any garnishment . . . action based on the policy." *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 265 (Mo. banc 2013).

**Analysis**

"As a general rule, [in a garnishment in aid of execution] the garnishee cannot dispute the merits of [the] plaintiff's claim against the defendant, and cannot go outside the record to make a collateral attack on the judgment." *Thompson v. B&G Wrecking & Supply Co.*, 346 S.W.2d 65, 68 (Mo. 1961) (citation omitted). "The issues of the suit in which the judgment was obtained are not subject to being retried in a garnishment proceeding in aid of execution of that judgment." *Id.* "Garnishment has nothing to do with the merits of the main suit." *Id.* (internal quotation omitted). "Garnishment in aid of execution is an incidental remedy whereby a plaintiff seeks to collect the judgment by reaching the defendant's property in the hands of a third party."

---

[10] In its briefing, Insurer/Garnishee relies upon pre-*Schmitz* precedent wherein the defendant (and purported insured) had stipulated to liability and damages in the underlying tort suit, such that the appellate courts declared that the insurers were not collaterally estopped from making coverage arguments in subsequent indemnity proceedings. *See James v. Paul*, 49 S.W.3d 678 (Mo. banc 2001) (Insured had pled guilty to criminal charges of assault but later "stipulated" in a civil suit that his conduct was "negligent," and trial court entered judgment in accordance with stipulation.); *Cox v. Steck*, 992 S.W.2d 221 (Mo. App. E.D. 1999) (Though sued for alternatively pled counts of intentional assault and negligence, insured "stipulated" to negligence, and trial court summarily entered judgment for negligence thereon.). Those cases are inapposite. Instead, like *Schmitz*, Allen did not rely upon any stipulations as to liability or damages. Allen presented evidence on liability and damages in a bench trial. Like *Schmitz*, "[the plaintiff] still had the burden to prove liability and damages in a bench trial. Although the trial court found [the defendant] liable and awarded [the plaintiff damages], it could have found that [the defendant] was not liable or that no damages were suffered." *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 709 (Mo. banc 2011). The *Schmitz* court found this to be a significant distinction, and as this declaration of law comes from our Supreme Court, we must follow it.

13

*Landmark Bank of Ladue v. Gen. Grocer Co.*, 680 S.W.2d 949, 953 (Mo. App. E.D. 1984). "As an incidental remedy, garnishment [in aid of execution] was never intended to enable [an insured or the insured's assign] to enforce claims held by him directly against the garnishee." *Id.*

The only issue in a garnishment in aid of execution is whether "the garnishee is possessed of property or effects of the defendant, or is indebted to the defendant." § 525.220.[11] At trial:

> If . . . it shall appear that property, effects or money of the defendant are found in the hands of the garnishee, the court or jury shall find what property or effects, and the value thereof, or what money are in his hands, . . . then the court shall enter up judgment against the garnishee for the proper amount or value as found in money, and execution may issue forthwith to enforce such judgment.

§ 525.200.

Accordingly, the only question in a Rule 90 garnishment proceeding under this procedural scenario is whether Insurer/Garnishee furnished liability coverage under the insurance policy designed to provide indemnification to Bryers for damages *Bryers* caused to *Allen* and which are detailed by the Underlying Judgment. This is because a Rule 90 garnishment proceeding is an *in rem* ancillary action designed to enforce rights and obligations set forth by the Underlying Judgment. This is *not* a proceeding in which separate and independent tort claims that *Bryers* may possess against *Insurer/Garnishee* may be pursued. Such claims simply are not ancillary to any adjudication contained within the Underlying Judgment. The Underlying Judgment makes no mention of any breach of duty owed by *Insurer/Garnishee* to *Bryers*. Instead, those are fiduciary and, arguably, punitive claims against an insurer that simply are not permissible in this procedural setting.

> In the present case, it is evident that garnishor has attempted to bring a separate and independent action against garnishee for an alleged breach of fiduciary duty within the narrow confines of a garnishment in aid of execution. Garnishor's action requires a proceeding more elastic and comprehensive than a garnishment.

---

[11] Similarly, under Rule 90, the issue is whether the garnishee has in its "possession, charge, or control" property of the debtor subject to garnishment. *See* Rule 90.07(a)(1).

14

> Neither Chapter 525 . . . nor Rule 90 provide[s] for an action by a garnishor against a garnishee for punitive damages. We cannot permit garnishor to substitute the purely incidental remedy of garnishment for an action alleging breach of fiduciary duty and requesting punitive damages.

*Landmark Bank of Ladue*, 680 S.W.2d at 954.[12]

Thus, to the extent the trial court's judgment has awarded damages against Insurer/Garnishee that arise from duties (or breach thereof) flowing between *Insurer/Garnishee* and *Bryers* instead of indemnification for damages caused by *Bryers* to *Allen*, the trial court was not authorized to award such damages in this limited statutory proceeding. Here, it is undisputed that the policy limits of liability coverage under the insurance policy was $1 million for damages caused by *Bryers* to *Allen*. Thus, any damages awarded in excess of the policy limit constitute damages for breach of duty between *Insurer/Garnishee* and *Bryers* that the trial court was not authorized to consider or award in this proceeding.[13]

Accordingly, we grant Insurer/Garnishee's appeal as to its argument that the trial court exceeded its authority in awarding damages in excess of the $1 million policy limit and vacate that portion of the trial court's judgment against Insurer/Garnishee.

The remaining issue before this court is whether the trial court erred in conducting the sole authorized inquiry: whether judgment debtor Bryers was covered under Insurer/Garnishee's insurance policy.

---

[12] In his briefing to this court, Allen has not cited to any precedent in which a traditional garnishment in aid of execution proceeding has been used to assert independent claims of breach of duty owed to a judgment debtor by the judgment debtor's insurer. Instead, Allen has cited to precedent involving equitable garnishment and declaratory judgment—cases in which the insurer is a named party in the litigation. While one or both of those remedies may permit the sort of independent claims of relief against the insurer that are not permissible in the underlying proceeding, Allen did not choose either of those remedies. Allen chose traditional garnishment under Chapter 525 and Rule 90, and he is bound by the confines of Chapter 525 and Rule 90.

[13] Our ruling today is not to suggest that Allen is without any remedy to pursue independent claims of relief against Insurer/Garnishee (that Allen has acquired via assignment from Bryers). In fact, in our ruling today, we have identified the nature of cumulative relief available to a judgment creditor in the position of Allen. However, as such claims were not properly before the trial court or this court, we offer no analysis as to the merits of any such claims.

**Coverage Under the Insurance Policy**

In pertinent part, Insurer/Garnishee argued in response to the motion for summary judgment that material questions remain as to whether: the injury sustained by Allen was caused by an unintentional accidental discharge of Bryers's weapon; the injury resulted from the negligence of Bryers; the injury did not arise from an assault and battery; Bryers's force was reasonable; and Bryers was acting within the course and scope of his employment with The Sheridan Apartments. We disagree. In the Underlying Judgment, the trial court expressly found that at the time of Bryers's discharge of the handgun: Bryers was acting within the course and scope of his employment with The Sheridan Apartments; Bryers's discharge of the handgun acquired at the direction of his employer was unintentional, accidental, and the product of negligence; Bryers's actions that resulted in the discharge of the handgun were not the product of an assault, battery, or any intentional act; and that Bryers's attempted use of force was not excessive or unreasonable, but instead, merely negligent. These findings from the Underlying Judgment are binding upon Insurer/Garnishee.

> Where one is bound to protect another from liability, he is bound *by the result of the litigation* to which such other is a party, provided he had opportunity to control and manage it. The standard is whether the insurer had the *opportunity* to control and manage the litigation, not whether the insurer had the *duty* to control and manage the litigation.
>
> . . . .
>
> . . . [The insurer] cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend.

*Schmitz*, 337 S.W.3d at 709-10 (citations omitted) (internal quotation marks omitted).

16

Further, in response to Insurer/Garnishee's argument that its due process rights have been violated due to what it argues is an Underlying Judgment procured by fraud and collusion between Bryers and Allen, we have addressed this argument before:

> Recognizing the dilemma an insurer is in when it believes it has a valid defense to coverage, the courts have provided that the insurer may file a declaratory judgment action to determine whether its policy provides coverage. The insurer also may ask that the underlying tort suit be stayed until the declaratory judgment action is decided. That, however, is the extent of protection the insurer receives in these situations.[14]

*Ballmer v. Ballmer*, 923 S.W.2d 365, 369-70 (Mo. App. W.D. 1996) (citations omitted).

Insurer/Garnishee had the opportunity to defend Bryers and control the litigation filed against him by Allen. No due process rights have, therefore, been violated, and Insurer/Garnishee is bound by the result of the litigation against Bryers, including the factual determinations expressed in the Underlying Judgment. Based upon those factual determinations by the trial court in the Underlying Judgment, the exclusions to coverage relied upon by Insurer/Garnishee are not applicable as a matter of law, and the trial court did not err in concluding that the insurance policy provided indemnification to Bryers for the Underlying Judgment entered against Bryers. Thus, we conclude that the portion of the trial court's summary judgment that assessed a garnishment in aid of execution judgment against Insurer/Garnishee up to the policy limit of $1 million is not in error and is affirmed.

**Conclusion**

Rule 84.14 directs that this court "shall dispose finally of the case" and shall give judgment as the court "ought to give." The trial court's judgment of garnishment against

---

[14] It is not uncommon for an insurer in these circumstances to file a declaratory judgment action, to move to consolidate the declaratory judgment action with the tort case, and to seek a stay of the tort case until such time as the coverage case has been decided. Though Insurer/Garnishee here could have chosen this path to protect its interests, it did not. Instead, our search of Case.net records reflects that Insurer/Garnishee actually opposed efforts on the part of Allen to transfer a separately pending declaratory judgment action to the same Jackson County Circuit Court division that was presiding over the tort case between Allen and Bryers.

Insurer/Garnishee and in favor of Allen is affirmed up to the policy limits of $1 million. However, because the trial court exceeded its authority in rendering judgment in this Rule 90 proceeding regarding duties (or breach thereof) that may exist between the judgment debtor (Bryers) and Insurer/Garnishee, and in so doing, entered judgment for a sum in excess of the policy limits, that portion of the judgment is reversed and vacated. Finally, Insurer/Garnishee's points on appeal relating to its claim of error as to the trial court's rulings on its motion to intervene and motion to set aside are dismissed for the reasons set forth in today's ruling.

_____
Mark D. Pfeiffer, Judge

Thomas H. Newton, Presiding Judge, and
Victor C. Howard, Judge, concur.